984 A.2d 450 (2009)
411 N.J. Super. 91
STATE of New Jersey, Plaintiff-Respondent,
v.
Steven MUSTARO, Defendant-Appellant.
No. A-2582-08T4
Superior Court of New Jersey, Appellate Division.
Argued November 10, 2009.
Decided December 14, 2009.
*451 Donald F. Browne argued the cause for appellant (Merovitz, Cedar & Gruber, attorneys; Mr. Browne, on the brief).
*452 Jason Magid, Assistant Prosecutor, argued the cause for respondent (Warren W. Faulk, Camden County Prosecutor, attorney; Mr. Magid, of counsel and on the brief).
Katherine D. Hartman, Moorestown, argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Attorneys Hartman, Chartered, attorneys; Ms. Hartman, on the brief).
Before Judges WEFING, GRALL and MESSANO.
The opinion of the court was delivered by
GRALL, J.A.D.
Defendant Steven Mustaro appeals and challenges the denial of his post-sentence motion to vacate his plea of guilty to driving while intoxicated, N.J.S.A. 39:4-50.[1] Relying upon the court's decision in State v. Parsons, 341 N.J.Super. 448, 775 A.2d 576 (App.Div.2001), defendant claimed he would not have pled guilty if the State had provided him with a videotape recorded by the camera in the arresting officer's patrol car. By the time defendant filed his motion, which was about twenty months after he was sentenced, the videotape had been destroyed. Because defendant did not present evidence that would permit the trial court to conclude that the videotape was exculpatory and material to his decision to plead guilty or that withdrawal of his guilty plea is necessary to correct a manifest injustice, we affirm.
On November 29, 2006, defendant pled guilty to driving while intoxicated on September 27, 2006. The plea was entered pursuant to the State's agreement to dismiss additional charges for violations of N.J.S.A. 39:4-88, failure to maintain a lane; N.J.S.A. 39:3-29, failure to exhibit the vehicle's registration; N.J.S.A. 39:4-57, failure to comply with the officer's direction; N.J.S.A. 39:4-96, reckless driving; N.J.S.A. 39:4-98, speeding; N.J.S.A. 39:4-89, following too closely; N.J.S.A. 2C:29-2a(1), resisting arrest; and a violation of a municipal zoning ordinance. At the time of his plea, defendant acknowledged that he was operating a vehicle, had consumed four or five beers and had a blood alcohol content of .14 as measured by an Alcotest device.
In conformity with the Supreme Court's order of January 1, 2006, which governed disposition of violations of N.J.S.A. 39:4-50 pending the Court's determination of the reliability of the Alcotest device, defendant reserved "the right to appeal in the event [the Court] concluded that the Alcotest is not reliable." State v. Chun, 194 N.J. 54, 64-68, 943 A.2d 114, cert. denied, ___ U.S. ___, 129 S.Ct. 158, 172 L.Ed.2d 41 (2008). His plea was not entered subject to any other condition or reserved right. R. 7:6-2(c).[2]
*453 This was defendant's first conviction for violation of N.J.S.A. 39:4-50, and he was sentenced immediately following his plea. The judge dismissed the pending charges for other violations in conformity with the plea bargain, suspended defendant's license for seven months, required him to spend twelve hours in the Intoxicated Driver's Resource Center, and imposed a $306 fine, $33 in court costs, a $50 VCCB assessment, a $200 DWI surcharge, and a $75 SNSF penalty. Consistent with the Supreme Court's order in Chun, the judge stayed execution of that sentence. 194 N.J. at 67-68, 150, 943 A.2d 114.
On March 17, 2008, the Supreme Court concluded that the Alcotest device is reliable and specified conditions for admission of Alcotest results. Id. at 65, 145, 150-51, 943 A.2d 114. The opinion includes an order defining the scope of the limited challenge available to defendants who entered conditional pleas pending its decision in Chun. Id. at 68, 150-51.
In July 2008, defendant, who had retained different counsel, filed a motion in the municipal court seeking leave to vacate the guilty plea he had entered on November 29, 2006. Defense counsel acknowledged that his client was not entitled to relief under Chun. He argued, however, that defendant should be permitted to withdraw his plea, because he had since learned that the State failed to produce and subsequently destroyed a videotape recorded on a camera installed in the patrol car. In support of that application, defendant relied upon his prior attorney's request for "all Brady v. Maryland material," a certification from his new attorney, his own certification and the police report prepared by the arresting officer, Patrolman Adam Errico of the Audubon Police Department.
Aside from defendant's prior admissions to driving after consumption of four or five beers and a shot of tequila, the only factual information about defendant's violation before the trial court was the following account provided in Errico's report. Errico took note of defendant's Mercedes at 00:46 hours on September 27, 2006. The Mercedes approached the rear of his patrol car from the south at a high rate of speed, swerved into the northbound traffic lane, and returned to the southbound lane at a point behind and "extremely close to" the rear bumper of the patrol car. Errico pulled into an intersecting street, allowed the Mercedes to pass and then followed it from behind. The driver turned onto another street and parked in front of defendant's home. At that point, Errico turned on his overhead lights and parked behind the Mercedes. When the Mercedes came to a stop, defendant got out of the car and started to walk away from the officer; he did not comply with Errico's direction to return to the Mercedes. After detecting alcohol on defendant's breath, Errico administered sobriety tests, some of which defendant was unable to perform. Defendant subsequently resisted the officer's attempt to arrest him, and Errico needed assistance to effectuate his arrest. At headquarters, defendant was cooperative, but he told Errico that "all the charges would be dropped because he was never driving a car."
The certification defendant submitted in support of his motion to vacate the plea did not include a denial of driving on September 27, 2006.[3] Instead, defendant noted *454 that he told "Patrolman Errico that [he] was not operating [the] vehicle prior to the `stop'" and quoted the corroborating passage from Errico's report. He also asserted that he told his attorney he "wanted to testify that [he] never operated the car," but he did not provide any account or description of the circumstances that led to his early-morning arrest outside his home.
Defendant, repeating what he claimed his former attorney told him, certified that his lawyer had "assured [him that] he [had] made a formal request for the video[] and was told by the State that no video existed depicting the `stop.'" He asserted that he pled guilty because he believed he had no other choice. According to defendant, his former attorney counseled him that his denial of driving would raise a question of credibility that the judge would likely resolve against him.
After the Chun decision, defendant's newly retained attorney requested the videotape. There is now no dispute that a recording was made and the evidence it contained was subsequently destroyed in accordance with the police department's procedures calling for reuse of the videotapes after ninety days.
The attorney representing defendant on the motion to vacate his guilty plea relied upon Parsons. He argued that because the videotape was no longer available, the judge was required to assume that it contained exculpatory evidence material to his decision to plead guilty and warranting withdrawal of his guilty plea.
The judge of the municipal court applied Parsons, rejected defense counsel's argument, reiterated the terms of the sentence imposed in November 2006 and stayed defendant's sentence for an additional twenty days to permit him to file an appeal in the Law Division. Defendant's appeal from the denial of that motion was heard in the Law Division on December 18, 2008. The court, relying for the most part upon the inconsistency between defendant's admission of operation at the time of the plea and his claim about the exculpatory value of the videotape, denied defendant's motion and imposed the same sentence. Defendant's subsequent applications for a further stay of the execution of his sentence pending appeal were denied by the Law Division, this court and the Supreme Court.
Defendant raises three issues on appeal:
I. THE APPELLATE DIVISION SHOULD PROVIDE GUIDANCE TO LOWER COURTS CONSIDERING A REQUEST FOR A STAY OF A FIRST OFFENSE DRIVING WHILE INTOXICATED MANDATED DRIVER'S LICENSE SUSPENSION, DURING AN APPEAL ALLEGING DIRECT VIOLATION BY THE STATE OF DEFENDANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS, WHEN THE DENIAL OF THE REQUEST FOR A STAY ESSENTIALLY GUARANTEES DEFENDANT WILL SUFFER THE DETRIMENT OF A LICENSE SUSPENSION REGARDLESS OF THE OUTCOME OF THE APPEAL.
II. A DEFENDANT IS ENTITLED TO INDULGENCE FROM THE COURT WHEN MOVING TO WITHDRAW A GUILTY PLEA, *455 BEFORE SENTENCING, WHEN THE PLEA WAS GIVEN BEFORE LEARNING OF THE STATE'S FAILURE TO PROVIDE EXCULPATORY EVIDENCE IN ACCORDANCE WITH STATE V. PARSONS.

III. ALL CHARGES AGAINST APPELLANT SHOULD BE DISMISSED PURSUANT TO UNITED STATES V. PICARIELLO.

We consider the argument presented in Point II of defendant's brief first. Absent "an abuse of discretion which renders the lower court's decision clearly erroneous," State v. Simon, 161 N.J. 416, 444, 737 A.2d 1 (1999), we must affirm a trial court's decision on a motion to vacate. A denial of a motion to vacate a plea is "clearly erroneous" if the evidence presented on the motion, considered in light of the controlling legal standards, warrants a grant of that relief. See State v. Slater, 198 N.J. 145, 164, 966 A.2d 461 (2009).
These are the legal standards that govern defendant's application. Because defendant's motion to vacate his plea was filed twenty months after the municipal court imposed and stayed execution of his sentence, he was required to demonstrate that withdrawal of his plea was necessary to correct a "manifest injustice." R. 7:6-2(b); see R. 3:21-1; Slater, supra, 198 N.J. at 158, 966 A.2d 461. His claim that the trial court was required to review his motion with indulgence under the less burdensome "interest of justice" standard is based, at best, on a misunderstanding of either the facts or the law.
Since the trial court denied defendant's motion, the Supreme Court has provided guidance for assessment of a motion to withdraw guilty pleas. Slater, supra, 198 N.J. at 157, 966 A.2d 461. Trial judges must "consider and balance four factors in evaluating motions to withdraw a guilty plea: (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Id. at 157-58, 966 A.2d 461. "No factor is mandatory; if one is missing, that does not automatically disqualify or dictate relief." Id. at 162, 966 A.2d 461. And, where, as here, the motion is made subsequent to sentencing, the timing is relevant to "the strength of the reasons proffered in favor of withdrawal" under the second factor; "efforts to withdraw a plea after sentencing must be substantiated by strong, compelling reasons." Id. at 160, 966 A.2d 461.
In the context of Slater, defendant's claim  that he should be permitted to withdraw his plea because the State did not comply with its obligation to provide the videotape in discovery  is relevant to the second factor  "the nature and strength of defendant's reasons for withdrawal." Id. at 157-58, 966 A.2d 461. On this post-sentence motion, he was required to substantiate the claim with "strong, compelling reasons." Id. at 160, 966 A.2d 461.
Defendant's entitlement to relief under Parsons depends upon proof that his right to due process was violated by the State's failure to disclose or preserve exculpatory evidence as recognized in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), California v. Trombetta, 467 U.S. 479, 488, 104 S.Ct. 2528, 2533, 81 L.Ed.2d 413, 422 (1984), United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). See *456 State v. Marshall, 123 N.J. 1, 107-09, 586 A.2d 85 (1991). To make that showing, defendant was required to demonstrate that: "(1) the prosecutor failed to disclose the evidence, (2) the evidence was of a favorable character to the defendant, and (3) the evidence was material. Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)." Parsons, supra, 341 N.J.Super. at 454-55, 775 A.2d 576. The measure of materiality is the likely impact of the evidence withheld, i.e., whether there is "a reasonable probability" that if the evidence had been disclosed "the result of the proceeding would have been different." Bagley, supra, 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494. And, a "reasonable probability" is one "sufficient to undermine confidence in the outcome." Ibid.
In Parsons, this court articulated that standard for evaluating materiality when the defendant seeks to vacate a guilty plea on a claimed Brady violation. 341 N.J.Super. at 454-56, 775 A.2d 576. We concluded that "materiality," in that context, requires the defendant to show a reasonable probability that he or she would not have pled guilty if the State had provided the evidence. Ibid.; accord Campbell v. Marshall, 769 F.2d 314, 324 (6th Cir.1985) (rejecting a claim on the ground that the defendant had not shown that the evidence would have been controlling in his decision to plead guilty). We identified five factors bearing on the probability that defendant would not have pled guilty but for the discovery violation: "(1) the relative strength and weakness of the State's and the defendant's case, (2) the persuasiveness of the withheld evidence, (3) the reasons, if any, expressed by the defendant for choosing to plead guilty, (4) the benefits obtained [through] the plea, and (5) the thoroughness of the plea colloquy." Parsons, supra, 341 N.J.Super. at 456, 775 A.2d 576. Viewed in light of Slater, these Parsons' factors are relevant to the defendant's reasons for withdrawing the plea.
In Parsons, the State conceded that it withheld evidence that was "favorable to defendant, discoverable under our rules of practice, and should not have been concealed." Id. at 455, 775 A.2d 576. In this case, there is no question that the State had an obligation, pursuant to the applicable discovery rule, to provide the videotape. R. 7:7-7(b). Even if the prosecutor was not aware of its existence, the arresting officer was, and the officer's knowledge is imputed to the State. See Kyles v. Whitley, 514 U.S. 419, 437-38, 115 S.Ct. 1555, 1567-68, 131 L.Ed.2d 490, 508-09 (1995) (imputing knowledge of evidence known to the police to the prosecutor); accord State v. Womack, 145 N.J. 576, 589, 679 A.2d 606 (1996), cert. denied, 519 U.S. 1011, 117 S.Ct. 517, 136 L.Ed.2d 405. Unlike in Parsons, however, in this case the State does not concede that the videotape was favorable to the defense.
Defendant claims that the trial court was required to assume that the tape, now erased, included evidence favorable to him and material to his decision to plead guilty. Precedent does not support that assertion. For purposes of entitlement to relief under Brady and the Due Process Clause of the Fourteenth Amendment, a defendant must show that evidence withheld is "`material exculpatory evidence.'" Marshall, supra, 123 N.J. at 109, 586 A.2d 85 (quoting Youngblood, supra, 488 U.S. at 57-58, 109 S.Ct. at 337, 102 L.Ed.2d at 289).
When the evidence withheld is no longer available, to establish a due process violation a defendant may show that the evidence had "an exculpatory value that was apparent before [it] was destroyed" *457 and that "the defendant would be unable to obtain comparable evidence by other reasonably available means." Trombetta, supra, 467 U.S. at 489, 104 S.Ct. at 2534, 81 L.Ed.2d at 422; see Marshall, supra, 123 N.J. at 108-09, 586 A.2d 85. Alternatively, if the defendant cannot establish that the now lost evidence had "apparent" exculpatory value and can show only that the evidence was "potentially" useful or exculpatory, then the defendant can show a due process violation by establishing that the evidence was destroyed in bad faith. Youngblood, supra, 488 U.S. at 57-58, 109 S.Ct. at 337, 102 L.Ed.2d at 289; see State v. Reynolds, 124 N.J. 559, 569, 592 A.2d 194 (1991) (rejecting Brady claim because the destroyed tapes in issue "did not possess any apparent exculpatory value, and because their destruction did not involve bad faith"); cf. State v. Greeley, 354 N.J.Super. 432, 437, 808 A.2d 108 (App. Div.2002), rev'd on other grounds, 178 N.J. 38, 834 A.2d 1016 (2003) (considering "`(1) the bad faith or connivance by the government; (2) whether the evidence was sufficiently material to the defense; and (3) whether the defendant [has been] prejudiced' by the loss of the evidence" and quoting State v. Dreher, 302 N.J.Super. 408, 483, 695 A.2d 672 (App.Div.1997), certif. denied, 152 N.J. 10, 702 A.2d 349 (1997), cert. denied, 524 U.S. 943, 118 S.Ct. 2353, 141 L.Ed.2d 723 (1998)); State v. Colasurdo, 214 N.J.Super. 185, 189, 518 A.2d 768 (App.Div.1986) (quoting State v. Hollander, 201 N.J.Super. 453, 479, 493 A.2d 563 (App.Div.), certif. denied, 101 N.J. 335, 501 A.2d 983 (1985)).[4]
The evidence defendant presented to the trial court did not establish that the videotape had more than "potential exculpatory" value relevant to a violation of N.J.S.A. 39:4-50. The State was required to show that defendant was driving and was intoxicated. Defendant's Alcotest results established his intoxication as a matter of law, and nothing depicted on the videotape could defeat that proof of a per se violation. State v. Gordon, 261 N.J.Super. 462, 467, 619 A.2d 259 (App.Div.1993). At the time of his guilty plea, defendant admitted that he was driving. In support of his motion to withdraw, defendant provided no information to the trial court that would have allowed the court to conclude that the videotape included evidence that would show he was not driving. Defendant's certification did not include a denial of driving  a fact his attorney was careful to point out to the judge  or any factual assertions suggesting the videotape would show him doing something inconsistent with having driven the car. He did not, for example, indicate that someone else was driving or that he was outside after midnight because he was taking a walk, welcoming a guest or getting something from his car. Moreover, Patrolman Errico's report, the only relevant evidence of the event presented to the trial court, suggests nothing other than that the video camera in his patrol car was activated after the Mercedes had stopped; that is when Errico reports that he switched on the patrol car's overhead lights. From the information presented on the motion, the most one could conclude is that the videotape might not show defendant driving or getting out of the parked car. But, even if the videotape failed to depict that conduct, it would not establish that defendant had not been operating the car before the video camera was activated.
The record is also devoid of evidence that would permit an inference of bad faith *458 or connivance on the part of the State at the time the evidence was destroyed. Defendant was arrested on September 27, 2006 and pled guilty on November 29, 2006, approximately two months after his arrest. Defendant does not dispute that the videotape was reused in accordance with departmental procedures no earlier than ninety days after his arrest, which is about a month after his guilty plea. Those facts are not indicative of bad faith. See Reynolds, supra, 124 N.J. at 569, 592 A.2d 194. After the plea, the State had no reason to assume or suspect that the videotape would play any role in this case. Even before the plea, given defendant's Alcotest results and Errico's report, a videotape that did not depict defendant driving or getting out of his car would not have "apparent" exculpatory value.
Because defendant did not establish that the videotape had exculpatory value that was apparent to the State when it was erased through reuse or that its potentially exculpatory value was destroyed in bad faith, defendant could not establish his entitlement to relief. Ibid. Even if we were to assume that the videotape included exculpatory evidence and was available to the prosecution at the time of discovery, we could not conclude that defendant demonstrated that the videotape was material to his decision to plead guilty. See United States v. Pedraza, 27 F.3d 1515, 1527 (10th Cir.1994) (assuming existence at the time of discovery and considering materiality), cert. denied, 513 U.S. 941, 115 S.Ct. 347, 130 L.Ed.2d 303.
Under Parsons, defendant was required to establish a reasonable probability that he would not have pled guilty if he had the videotape, which is largely a function of the relative strength and weakness of the case for the prosecution and the defense and the persuasiveness of the withheld evidence. 341 N.J.Super. at 456, 775 A.2d 576. In making that assessment, other courts have considered statements made by the defendant at the time of the plea. See Campbell, supra, 769 F.2d at 322, 324 (finding that knowledge of a victim's possession of a gun, while important to the defendant and his attorney, would not have led him to go to trial on a claim of self-defense because of the great weight that must be assigned to defendant's admission, made in open court at the time of his guilty plea, that he shot his former wife and her companion because they were with one another). We agree with that approach.
Nothing in Parsons or Slater precludes consideration of the factual basis a defendant provided at the time of a guilty plea in evaluating the persuasive value of evidence withheld by the State on a motion to vacate a guilty plea. Parsons simply holds that courts "should not insist that the defendant proclaim his innocence in order to retract a guilty plea" when the relief is sought due to the State's failure to provide discovery. 341 N.J.Super. at 457, 775 A.2d 576. Slater holds that a defendant who has provided a factual basis for his guilty plea may establish a plausible claim of innocence and a reason for withdrawal of a plea by asserting that he was not aware of a possible defense when he pled guilty. 198 N.J. at 163-65, 966 A.2d 461. The question here is different; it is whether a court is required to assume that the defendant would have testified to facts in direct conflict with those facts he stated, under oath, at the time of his guilty plea. We decline to adopt such a rule because it would be in conflict with decisions of our Supreme Court stressing the necessity for a defendant to provide a truthful factual basis for a guilty plea under oath. See State v. Taccetta, 200 N.J. 183, 195-96, 975 A.2d 928 (2009).
For the foregoing reasons, we cannot conclude that the trial court was required *459 to assess the persuasive value of the videotape on the assumption that defendant would have denied driving if he had proceeded to trial instead of pleading guilty. Because defendant admitted that he was driving at the time of the plea, the court could properly assume that defendant would have done nothing more than leave the State to its proofs. Thus, the question material to defendant's decision to plead guilty was the persuasive value of the videotape on the issue of driving in light of the State's evidence. Relying on our earlier discussion of the potential value of the videotape in light of Errico's report, it is apparent that the videotape would have been inconclusive on the question whether defendant was driving the Mercedes before his arrest. In short, the videotape might have provided some fodder for cross-examination of Errico about defendant's driving in addition to the material already available based on the passage in Errico's report noting defendant's denial at police headquarters. So viewed, the persuasive value would have been negligible.
On this record, the trial court could not have concluded that if defendant had the videotape he would have gone to trial and rejected the favorable plea bargain he received, which resulted in the dismissal of numerous charges and permitted him to reserve his right to challenge the Alcotest results in the event the Supreme Court found the device unreliable. As that was the only reason defendant gave for moving to withdraw his guilty plea twenty months after he was sentenced, defendant simply did not meet his burden of providing the trial court with a strong and compelling reason to grant that relief. Slater, supra, 198 N.J. at 160, 966 A.2d 461.[5]
None of the other relevant factors identified in Slater weigh in defendant's favor. He did not "assert[] a colorable claim of innocence" and, as noted above, his plea was entered pursuant to "a plea bargain" that was quite favorable. Id. at 157-58, 966 A.2d 461. Other than the prejudice inherent in the fact that the videotape had been destroyed in accordance with the police department's procedures and consequently was no longer available to the prosecution, there is no evidence relevant to "unfair prejudice to the State or unfair advantage to the accused," but the State is not obligated to show prejudice when the "defendant fails to offer proof of other factors in support of the withdrawal of a plea." Id. at 161-62, 966 A.2d 461.
The record did not permit a finding that a grant of defendant's motion to vacate his guilty plea was necessary to correct a manifest injustice. Accordingly, we affirm.
In light of our conclusion that defendant failed to establish a due process violation related to discovery, it is unnecessary for us to address the issues raised in Point III of defendant's brief. With respect to the argument raised in Point I, we find no need for clarification or amplification of the standards governing a stay pending appeal and conclude that the arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).
Affirmed.
NOTES
[1] By leave granted, the Association of Criminal Defense Lawyers of New Jersey filed a brief and argued as amicus curiae.
[2] While a guilty plea generally constitutes a waiver of the right to challenge a constitutional violation not expressly reserved, other than the denial of a motion to suppress evidence, R. 7:5-2(c)(2); R. 3:5-7(d); State v. Greeley, 178 N.J. 38, 50-51, 834 A.2d 1016 (2003), several state courts and Federal Courts of Appeal have held that a defendant may withdraw a guilty plea if the defendant can establish that "his guilty plea was not voluntary and intelligent because it was made in the absence of withheld Brady material." Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir.1995) (and cases cited therein); Parsons, supra, 341 N.J.Super. at 456-57, 775 A.2d 576 (and cases cited therein); cf. United States v. Ruiz, 536 U.S. 622, 629, 122 S.Ct. 2450, 2455, 153 L.Ed.2d 586, 595 (2002) (concluding that due process does not require "preguilty plea disclosure of impeachment information" but suggesting that the analysis may be different with respect to evidence of actual innocence).
[3] Defendant's new attorney was careful to inform the judge that defendant's certification did not include an "actual[] den[ial]" of operation. See N.J.R.E. 410(2) (permitting use of a statement made during a plea proceeding "in a criminal proceeding for perjury, false statement, or other similar offense" but otherwise prohibiting use of those statements at trial); State v. Malik-Ismail, 292 N.J.Super. 590, 595, 679 A.2d 664 (App.Div.1996) (noting that N.J.R.E. 410(2) "effectively supersedes" State v. Boyle, 198 N.J.Super. 64, 486 A.2d 852 (App.Div.1984), a case permitting use of statements made at the time of guilty plea later withdrawn to impeach defendant's inconsistent testimony at trial). See generally State v. Boone, 66 N.J. 38, 50, 327 A.2d 661 (1974).
[4] Some jurisdictions have determined as a matter of state constitutional law that proof of bad faith is not required. See, e.g., State v. Johnson, 288 Conn. 236, 951 A.2d 1257, 1284 (2008). As indicated by the citations to Marshall and Reynolds above, the New Jersey Supreme Court has followed Youngblood.
[5] Defendant does not argue that the court erred by making that determination without taking testimony. Given defendant's sworn admission to driving at the time of his guilty plea and his cautious reliance on his post-arrest denial as reported by Errico in support of his motion, we see no reason to disturb the trial court's decision to discredit defendant's bald assertion about the importance of the videotape to his decision to enter a guilty plea.