**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1388-15T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WILAN FERRERAS SANTANA,
a/k/a WILAN FERRERAS-SANTANA,
WALIN ROSARIO FERRERA-SANTANA,
WALIN PERRAS-SANTANA, WALIN
R. SANTANA, and WALIN R. FERRERAS,

    Defendant-Appellant.

_____

Submitted March 7, 2017 — Decided May 30, 2017

Before Judges Espinosa and Suter.

On appeal from Superior Court of New Jersey,
Law Division, Atlantic County, Indictment No.
12-12-2889.

Joseph E. Krakora, Public Defender, attorney
for appellant (Alan I. Smith, Designated
Counsel, on the brief).

Diane M. Ruberton, Acting Atlantic County
Prosecutor, attorney for respondent (Sevan
Biramian, Special Deputy Attorney
General/Acting Assistant Prosecutor, of
counsel and on the brief).

PER CURIAM

Defendant appeals from the denial of his petition for post-conviction relief (PCR) and his post-sentence motion to withdraw his guilty plea. We affirm.

I.

The charges against defendant were filed after his former girlfriend reported that he entered her apartment through a bathroom window while she was sleeping, began to kiss her and, when she resisted, he assaulted her physically and sexually.

Defendant entered a guilty plea to one count of second-degree burglary, N.J.S.A. 2C:18-2, pursuant to a plea agreement in which the State agreed to recommend the imposition of a sentence one degree lower, of four years subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The plea agreement called for the dismissal of counts of the indictment that alleged third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7), and first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a).

At the time defendant entered his guilty plea, he had the assistance of a Spanish interpreter. The trial judge advised him, "If you don't understand anything that's going on, let us know and we'll take the time to make sure that you do." Defendant responded, "Okay."

The trial judge explained the sentencing consequences of his plea:

> Now, you face as a result of your plea and depending on your record to up to ten years in state prison, 85 percent of which you could be ineligible for parole. The State, however, has agreed to recommend that you be treated as a third-degree offender with a recommended sentence of four years in state prison subject to the No Early Release Act. Anything else pending against you from these charges would be dismissed. Is all of that your understanding of the deal?

Defendant answered, "Yes." The judge also explained the application of NERA to defendant's specific case:

> The No Early Release Act means that you'll serve 85 percent of the four-year sentence before you're eligible for parole, which means approximately three years, four months and 26 days. You'll get credit for any time served. Do you understand that?

Once again, defendant answered, "Yes." In eliciting a factual basis for the guilty plea, the judge asked defendant the following separate questions: (1) if he entered the property of his former girlfriend unlawfully, (2) if he did so with the purpose to commit an offense, and (3) if he knowingly or recklessly inflicted bodily injury upon his former girlfriend during the course of committing this offense. After defendant answered, "Yes," to each of these questions, the judge asked an open-ended question, "Tell me what you did, sir."

Defendant replied:

> I went in the house, I went in the home, I went into the house and had an argument, we

3

fought, we fought.  I took her to the hospital because I saw she wasn't feeling well.

The judge questioned defendant further:

Q.    Okay.  When you said you fought, that means that you had some kind of physical altercation with her in which you struck her?

A.    Yes.

Q.    And as a result of which, she suffered some pain or bruising by hitting her?

A.    Yes.

Q.    And the offense that you were going to commit when you entered the property was this assault, is that correct?

A.    Yes.

Defendant further admitted he entered the property without lawful permission.  Before accepting the plea, the judge asked if he had any questions about his guilty plea.  Defendant replied he had none and confirmed he still wished to plead guilty.

Defendant was sentenced in December 2013 to four years subject to NERA.  He did not file a direct appeal.

In October 2014, defendant filed a motion to vacate his guilty plea. A certification submitted in support of the motion asserted he is not fluent in English and that his attorney misled him to believe he was pleading guilty to "4 flat for a third-degree burglary" when in fact he was sentenced to four years subject to

NERA. He stated he would not have accepted the plea bargain if he had known he would receive a sentence subject to NERA. He stated further that his misunderstanding was confirmed by other inmates who advised him that he would receive a "4 flat" sentence and that he did not learn he was sentenced to a NERA sentence until he arrived at the Southern State Correctional Facility. The relief sought by defendant was to be resentenced to a "4 flat" or to have his conviction reversed so he could negotiate a new plea bargain.

In May 2015, defendant filed a petition for PCR. He asserted his trial counsel was ineffective because she represented to him that the time he would serve would be reduced by "good time" and "work time" credits; that she used "scare tactics" in advising him he "would most certainly be found guilty" if he proceeded to trial and "would receive a much more severe term." Defendant stated he asked her to move to withdraw his guilty plea on the day of sentencing and that she stated he would have to pay her at least another $1000 "to continue representing [him] and to withdraw [his guilty] plea at this time and proceed with further plea negotiations." Defendant stated he was unable to pay the additional fee and "conceded to the plea agreement." He reasserted that if he had known he would be required to serve 85 percent of a four-year sentence, he would not have agreed to plead guilty.

Defendant was assigned counsel to represent him in his petition for PCR.

Defendant's motion to vacate his guilty plea and his PCR petition were heard on the same day. Both the motion and the PCR petition were denied and the PCR judge set forth his reasons in a written opinion.

In his appeal from the denial of his petition and motion, defendant presents the following arguments for our consideration:

POINT I

THE ORDER DENYING POST-CONVICTION RELIEF SHOULD BE REVERSED AND THE MATTER REMANDED FOR AN EVIDENTIARY HEARING BECAUSE, WHEN THE DEFENDANT ALLEGES THAT TRIAL COUNSEL TOLD HIM IN AN OFF-THE-RECORD CONFERENCE THAT HIS 85% NERA CUSTODIAL EXPOSURE WOULD BE REDUCED BY "WORK CREDITS" AND "GOOD TIME CREDITS," AND WHEN THE DEFENDANT ALLEGES THAT IN ANOTHER OFF-THE-RECORD CONFERENCE TRIAL COUNSEL TOLD HIM THAT SHE WOULD NOT FILE A MERITORIOUS PRE-SENTENCE MOTION TO PERMIT HIM TO WITHDRAW HIS GUILTY PLEA BECAUSE HE FAILED TO PAY ADDITIONAL LEGAL FEES, AND THE STATE DOES NOT FIND IT APPROPRIATE TO SUBMIT A CERTIFICATION OR AFFIDAVIT FROM TRIAL COUNSEL CONTESTING THE ALLEGATIONS, A PRIMA FACIE SHOWING OF INEFFECTIVE ASSISTANCE OF COUNSEL WAS MADE.

A-1388-15T1

POINT II

THE COURT'S RULING DENYING POST-CONVICTION RELIEF VIOLATED DEFENDANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

POINT III

DEFENDANT'S POST-CONVICTION RELIEF MOTION TO SET ASIDE HIS GUILTY PLEA PURSUANT TO STATE V. SLATER SHOULD HAVE BEEN GRANTED.

We are not persuaded by any of these arguments and affirm.

II.

We first address defendant's appeal from the denial of his petition for PCR without an evidentiary hearing. The standard for determining whether counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42 (1987). In order to prevail on a claim of ineffective assistance of counsel, defendant must meet the two-prong test of establishing both that: (1) counsel's performance was deficient and he or she made errors that were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists a

"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, supra, 466 U.S. at 687, 694, l04 S. Ct. at 2064, 2068, 80 L. Ed. 2d at 693, 698.

Although we must "view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim," State v. Preciose, 129 N.J. 451, 462-63 (1992), "a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.), certif. denied, 162 N.J. 199 (1999). If "the defendant's allegations are too vague, conclusory, or speculative," an evidentiary hearing is not warranted. State v. Marshall, 148 N.J. 89, 158, cert. denied, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88 (1997).

As the PCR judge found, defendant's claims of ineffective assistance failed to rise above bald assertions and were refuted by the record.

The PCR judge discussed each of the grounds advanced for PCR.[1] The judge rejected defendant's contention that trial counsel

---

[1] In addition to the grounds asserted in defendant's certifications, PCR counsel argued trial counsel was ineffective for failing to advise him of the deportation consequences of his plea. That argument is unsupported by an affidavit as required by Rule 3:22-10(c), and, in any case, is not advanced on appeal.

failed to advise him of the material terms of the plea agreement as "a bald assertion, unsupported by the facts in the record." He included excerpts from the transcripts that showed: defendant was afforded the assistance of an interpreter; the judge advised him he should alert the court if he did not understand; the plea forms were read to him in Spanish and defendant confirmed he could understand them. The transcript of the plea colloquy also showed the judge had explained the application of NERA to defendant and that defendant confirmed he understood. The PCR judge concluded there was no merit to the arguments regarding defendant's inability to understand the terms of his plea agreement due to a language barrier or his allegation he did not understand how NERA affected the time he would serve.

The PCR judge recited excerpts from the plea hearing in which defendant stated: he was satisfied with his counsel and the plea agreement; he admitted his guilt and stated no one had threatened him to induce him to plead guilty. These excerpts refuted defendant's contention that trial counsel had coerced him into pleading guilty.

---

We note, however, that in rejecting this argument, the PCR judge stated the deportation consequences were presented in both the plea form and by the judge.

Defendant also argued trial counsel was ineffective because she demanded an additional fee before she would file a motion to vacate his guilty plea. Even if we afford defendant's assertion all favorable inferences, we conclude that argument cannot satisfy the second prong of the Strickland test because, as we discuss infra, such a motion was unlikely to succeed.

Because defendant failed to make a prima facie showing of ineffectiveness of trial counsel under the Strickland test, the PCR judge correctly concluded an evidentiary hearing was not warranted. See Preciose, supra, 129 N.J. at 462-63.

III.

We next turn to the denial of defendant's motion to withdraw his guilty plea, which we review for abuse of discretion. State v. Mustaro, 411 N.J. Super. 91, 99 (App. Div. 2009).

In State v. Slater, 198 N.J. 145 (2009), the Supreme Court identified the following factors to be used in evaluating defendant's motion:

> (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.
>
> [Id. at 157-58.]

10

The decision to set aside a guilty plea lies within the court's discretion, which is to be exercised liberally to allow plea withdrawals before sentencing. Id. at 156. Defendant's motion was made after sentence and would, ordinarily be subject to denial unless a manifest injustice would result. R. 3:21-1. Because defendant has asserted he asked trial counsel to file such a motion before sentencing, and in light of his PCR petition, we will apply the more liberal standard to the application of the Slater factors. We note, however, that "[i]n all cases . . . the burden rests on the defendant, in the first instance, to present some plausible basis for his request, and his good faith in asserting a defense on the merits." Slater, supra, 198 N.J. at 156 (citation and internal quotation marks omitted).

Our review of the PCR judge's written decision reveals he considered the relevant Slater factors and carefully reviewed the record to support his findings as to each factor.

His finding that defendant failed to assert a colorable claim of innocence had ample support in the record, both in the representations defendant made in the plea colloquy and in the assertions he made in his motion. Specifically, the PCR judge noted defendant's argument that he merely entered the apartment to retrieve his uniform "is not a claim of innocence but rather an excuse" in light of his admission at the plea hearing he was

11 <span>A-1388-15T1</span>

not permitted in the residence. The judge observed, "[e]ven if he was permitted to be there, he did not enter through the door but rather climbed through a bathroom window, an uncommon method of entry for someone to lawfully enter." Moreover, defendant admitted he was guilty of the crimes charged.

As to the second Slater factor, the PCR judge found defendant's stated reason for withdrawing his plea — that he misunderstood the terms of the plea — was belied by the record. In reviewing the third Slater factor, the PCR judge noted defendant had entered a guilty plea to a plea agreement that afforded him a "substantial benefit" by permitting him "to plead to a second-degree offense, be sentenced a degree lower, and have all remaining charges against him dismissed."

In assessing the fourth Slater factor, the PCR judge did not make any finding that defendant would secure an unfair advantage or the State would suffer prejudice if defendant was permitted to withdraw his guilty plea. Instead, the judge found defendant would not sustain prejudice and that there would be no manifest injustice in denying his motion. Strictly speaking, defendant's motion was subject to the "manifest injustice" standard because it was made after sentencing. R. 3:21-1. Even if we apply the "interests of justice" standard applicable to motions made at or before sentencing, R. 3:9-3(e), an application and weighing of the

Slater factors here reveals no abuse of discretion in the denial of his motion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION