**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2388-23
A-3599-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SHAUN CLIFTON-SHORT,

    Defendant-Appellant.

_____

Submitted October 16, 2025 – Decided December 9, 2025

Before Judges Gummer and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 08-03-0985.

Shaun Clifton-Short, self-represented appellant.

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Frank J. Ducoat, Deputy Chief Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

In 2009, an Essex County jury convicted Shaun Clifton-Short of charges arising from two incidents that occurred on consecutive days in 2007 in Orange and East Orange respectively. In the first incident, the jury found defendant guilty of first-degree murder, felony murder and additional charges stemming from the killing of a gas station attendant during a robbery. Defendant received a sentence of life imprisonment with a thirty-year parole disqualifier under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. In the second incident, involving an attack on a Dunkin' Donuts employee, the jury returned guilty verdicts for first-degree robbery, attempted murder and various weapons offenses. For those crimes, defendant received a consecutive sentence of fifty-two years under NERA.

On direct appeal in 2012, we affirmed the convictions and sentences but remanded the case for "the trial court to correct the JOC to reflect merger of the murder and felony murder convictions [in the gas station case] and to also enter the correct NERA period of parole ineligibility[,]" eighty-five percent of a seventy-five-year sentence, or sixty-three years. We rejected defendant's remaining challenges to the convictions and sentences, including defendant's contention that the trial court's omission of a portion of the jury charge regarding self-defense constituted reversible error. State v. Clifton-Short, No. A-5817-08

(App. Div. Sep. 13, 2012) (slip op. at 12). The Supreme Court denied defendant's petition for certification. State v. Clifton-Short, 213 N.J. 536 (2013).

In a 2017 opinion, this court affirmed a 2014 denial of defendant's post-conviction relief (PCR) petition, including his claim that trial counsel "failed to obtain favorable material surveillance video [evidence] . . ." capturing the Dunkin' Donuts incident. State v. Clifton-Short, No. A-0197-14 (App. Div. Mar. 1, 2017) (slip op. at 6). The Supreme Court denied defendant's petition for certification. State v. Clifton-Short, 230 N.J. 494 (2017). Defendant now appeals in No. A-2388-23 a January 4, 2024 order denying his motion to compel production of purportedly exculpatory video evidence associated with the murder case. Because defendant makes arguments in support of this appeal that are identical to arguments he raised, and we rejected, in his prior appeal in 2017, we affirm the denial of his motion.

In a companion matter, No. A-3599-23, defendant appeals two orders from April and May 2024 denying his motion for a new trial in the gas station murder case and motion for reconsideration of that denial. As on direct appeal, defendant's argument rests on the trial court's omission of a portion of the model

jury charge regarding self-defense. Because this court adjudicated the merits of this claim in 2012, it is barred, and we affirm both orders.

We calendar these matters back-to-back for the purpose of issuing a single opinion.

I.

For context, we reproduce the facts rendered in our 2012 opinion:

> In the early morning hours of January 31, 2007, a murder occurred at a gas station in Orange, New Jersey. No one witnessed the incident, and the station's manager discovered the murdered employee inside an office in the back of the station's outside kiosk. The victim was found covered in blood, and the medical examiner on the scene concluded the victim died of "[m]ultiple blunt force trauma to the head" in a homicide.
>
> One day later, defendant and another man were arrested in connection with a separate incident, a robbery at a Dunkin' Donuts. After two individuals were injured there, surveillance tape showed two persons, later identified as defendant and his brother, walking toward the Dunkin' Donuts, then running away from it a few minutes later. During the course of their subsequent arrest, police found a hammer in the pocket of [defendant].
>
> Homicide investigator Christine Witkowski, who had been called to the murder scene two nights earlier, questioned defendant about the Dunkin' Donuts robbery and also questioned him about the gas station incident. Defendant told Witkowski that he and his brother went to the gas station . . . . He claimed the attendant

4

repeatedly told him and his brother to leave the station or else he would call the police. When they did not immediately leave, defendant claimed the attendant took a hammer and swung it at him, narrowly missing. Defendant then took the hammer from the attendant, striking him until the attendant fell to the floor. The attendant got up, and a more lengthy physical confrontation ensued, with the parties hitting each other multiple times. The attendant eventually was knocked unconscious. He and his brother then left the gas station with the hammer in their possession.

. . . .

Defendant moved to suppress the statement he provided to police, claiming it was the product of coercion. The court denied the motion, finding defendant knowingly and voluntarily waived his Miranda[1] rights. Defendant also filed a pro se motion to suppress evidence obtained when he was stopped, along with his brother, on February 1, 2007. He argued he was illegally stopped and searched, and therefore all evidence obtained during the search and seizure should be suppressed. The court denied this motion.

Both at the time the court conducted the Miranda hearing and just before the testimonial stage of the trial commenced, defendant sought removal of his trial counsel. The court granted defendant's second motion to represent himself, but also appointed trial counsel as standby counsel. The court subsequently denied defendant's motions for a substitute standby counsel and for a continuance to allow him time to prepare his case.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2388-23

In addition to the suppression motions and the motions to relieve his attorney, defendant filed additional motions: (1) to sever the two cases, (2) for a bill of particulars, (3) for a continuance to seek funding for a DNA expert, (4) to adjourn the trial date, (5) to dismiss the indictment for failure to provide an arraignment, (6) for Grand Jury voting record, (7) to suppress crime scene and autopsy reports, (8) to dismiss [c]ounts [e]ight and [n]ine of the indictment, and (9) to suppress an out-of-court identification. During trial, the court denied or rendered moot each of these motions.

[State v. Clifton-Short, No. A-5817-08 (slip op. at 2-5).]

Motion to Compel Production of Evidence

As recounted, there was surveillance video of the Dunkin' Donuts robbery. In contrast, there was no witness or video evidence of the gas station murder. The State's evidence in the gas station murder case consisted of defendant's statement to police and DNA results showing the gas station attendant's DNA on defendant's pants, sweatshirt, jacket, and glove worn the day of his arrest. Despite the non-existence of video evidence, defendant insists such evidence exists but has been withheld by the State.

Addressing this very claim in 2017, we said:

Defendant argues the State purposely withheld evidence, specifically surveillance videos which the State denied it possessed. As the PCR court noted, "[t]his issue was fully addressed by the trial court." Thus, defendant's claim of prosecutorial misconduct is

6

barred because it was previously litigated and because it could have been raised on direct appeal [in 2012].  R. 3:22-4(a)(1), -5.

Even if we consider this as a claim of ineffectiveness, it lacks merit.  The State represented that "officers went to various banks and . . . commercial establishments looking for video.  And they viewed those videos and they did not retain anything" with the exception of two tapes that "showed the defendant and his accomplice," which were "turned over [to defendant]."  All other tapes were false leads and nothing was retained.

Our discovery rules only require the State to turn over "photographs [and] video and sound recordings" if they "are within the possession, custody or control of the prosecutor."  R. 3:13-3(b)(1)(E).  Similarly, under Brady v. Maryland, 373 U.S. 83 (1963), the State only has a "constitutional obligation to provide criminal defendants with exculpatory evidence in the State's possession."  State v. Marshall, 148 N.J. 89, 154 (1997).

Neither the prosecutor nor the police ever took possession of the surveillance videos belonging to the banks and other commercial establishments.  There was no evidence that the videos were "favorable to the defense" or that there was "a 'reasonable probability that, had the [videos] been disclosed to the defense, the result of the proceeding would have been different.'" State v. Martini, 160 N.J. 248, 268-69 (1999) (citations omitted).  "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  State v. Marshall, 123 N.J. 1, 109 (1991) (quoting Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988)).  There was no evidence the police acted in bad faith in not seizing or preserving the

7

videos.  See State v. Mustaro, 411 N.J. Super. 91, 103
(App. Div. 2009).

[State v. Clifton-Short, No. A-0197-14 (slip op. at 13-
15).]

Sometime after we issued the 2017 opinion, defendant moved to compel the production of surveillance videos purportedly capturing the gas station homicide.  In denying defendant's motion in an order dated January 4, 2024, the judge cited the trial court's original pretrial ruling from November 18, 2008, regarding possible video evidence; a ruling echoed by the PCR court in 2014 and our court in 2017:

> There's no other tapes of the defendant.  Like I said, it was an investigation both in Orange and East Orange, and officers went to various banks and . . . commercial establishments looking for video.  And they viewed those videos and they did not retain anything unless - - the only ones that were retained were the Dunkin' Donuts video.
>
> The defendant has [said] that . . . there was a security camera, a municipal security camera on the . . . corner of Harrison and Main.  That tape showed the defendant and his accomplice, and that was turned over.  All other tapes were false leads and nothing was retained.  We don't have those.  The police officers don't have those. There's nothing to turn over.

The motion judge considered the trial court's original findings, concluding:

A-2388-23

[c]ritically, there is nothing in the motion or elsewhere on the record suggesting that any videos were ever recovered by the State. . . . In short, [p]etitioner has failed to establish the existence of any discoverable materials. Also, [p]etitioner has not shown that the State possessed and withheld any relevant and discoverable surveillance videos.

Jury Instruction on Self-Defense

In November 2023, defendant moved for a new trial "due to trial judge error" in its jury instructions, purported "by (1): not informing the jury that he was introducing to them the model jury charge for self-defense, and (2) did not read the last two elements of the [j]ustification [s]elf[-d]efense model jury charge."

In defendant's direct appeal decided in 2012, he combined both arguments in a single point:

> THE SELF-DEFENSE CHARGE DENIED MR. CLIFTON-SHORT DUE PROCESS OF LAW BECAUSE IT INEXPLICABLY FAILED TO INFORM THE JURY OF THE STATE'S BURDEN TO DISPROVE SELF-DEFENSE. U.S. CONST. AMENDS. V, VI AND XIV; N.J. CONST. (1947), ART. I, [¶] 1, 9 AND 10 (NOT RAISED BELOW).

Addressing this point, we explained:

> Defendant first argues the self-defense charge denied him due process of law because it failed to inform the jury of the State's burden to prove self-defense. New

9

Jersey's self-defense statute provides, in pertinent part, that:

> a. [T]he use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
>
> [N.J.S.A. 2C:3-4.]

There are, however, limitations placed on the use of force:

> (2) The use of deadly force is not justifiable under this section unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm; nor is it justifiable if:
>
> (a) The actor, with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter; or
>
> (b) The actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take . . . [.]
>
> [N.J.S.A. 2C:3-4.]

"[E]rroneous instructions on material points are presumed to be reversible error." State v. Martin, 119 N.J. 2, 15 (1990). The self-defense justification, as well as all other offenses and defenses, must be explained to the jury through the court's jury charge. Ibid. Correct charges "are essential for a fair trial. A charge is a road map to guide the jury, and without an appropriate charge, a jury can take a wrong turn in its deliberations. Thus, the court must explain the controlling legal principles and the questions the jury is to decide." Ibid. (citations omitted).

We have stated that "if any evidence raising the issue of self-defense is admitted in either the State's or the defendant's case, then the jury must be instructed that the State is required to prove beyond a reasonable doubt that the self-defense claim does not accord with the facts." State v. Burks, 208 N.J. Super. 595, 604 (App. Div. 1986). "Thus, as self-defense is an affirmative defense not requiring its establishment by a defendant . . . , a defendant may raise self-defense as an issue if there is evidence supporting it." Id. at 606.

Defendant claims that it was plain error for the trial court to fail to instruct the jury about the State's burden of proof to disprove self-defense once the defense is raised. The court neglected to read the final part of the jury charge:

> [I]t is the State's burden to disprove self-defense. Because a defendant can claim self-defense only if all four of the criteria . . . exist, the defense is unavailable if the State disproves any of the elements beyond a reasonable doubt. If the State carries this burden, you should disallow the defense. If the State does not carry this burden, then

11

you must allow the claim and acquit the
defendant.

The court's error in failing to include this aspect of the
self-defense charge, however, was not capable of
producing an unjust result. R. 2:10-2. The court
instructed the jurors that defendant had no burden of
proof, it was the State's burden to prove the charges
with proof beyond a reasonable doubt, and that the
State's burden never shifted. Although defendant, in his
testimony, denied being present at the gas station, in his
statement to police, he not only admitted striking the
victim with the hammer, but also told police the victim
asked him to leave before swinging the hammer at him
and that he easily wrestled the hammer away from the
victim. Thus, the evidence showed defendant had the
opportunity to retreat in safety but instead grabbed the
hammer from the victim, and the confrontation
followed.

[State v. Clifton-Short, No. A-5817-08 (slip op. at 9-
13).]

In her April 2, 2024 order, the motion judge cited the above-excerpted

portion of our 2012 opinion, concluding:

The Appellate Division has already ruled that there was
no unjust result from the same jury instruction that
[defendant] now raises in support of a new trial.
Therefore, the jury instructions did not violate
[p]etitioner's 14th Amendment right to a fair trial, nor
did the self-defense jury instruction result in an
improper verdict.

Defendant moved for reconsideration, claiming the judge's "reliance on

the September 13, 2012 decision of the Appellate Division [was] contrary to

12

established case law [and jury] instructions are not amenable to harmless error standards."  In denying defendant's motion in an order dated May 14, 2024, the judge cited Rule 3:22-5, noting that "[w]hen the grounds raised as a basis for relief have already been decided on the merits[] in a post-conviction proceeding, it cannot be raised again through this type of motion."  The judge concluded she could not "reconsider this issue because it was already decided on the merits by the Appellate Division [in its 2012 opinion]."  In so concluding, the judge added:

> Petitioner argues that this [c]ourt should reconsider its "reliance" on the Appellate Division's decision, because it supports "a manifest injustice that is repugnant to our state's constitution."  The [c]ourt disagrees with [defendant']s reading of the appellate decision.  The passage cited above shows the appellate panel carefully considered the record, including the jury instructions in their totality, before concluding the instructions did not create an unjust [result] after reviewing the full context of the jury instructions and the evidence at trial.
>
> Finally, [defendant] does not raise anything significantly new or different in his reconsideration motion, other than to object to this [c]ourt's determination that this issue has already been adjudicated on the merits.

## II.

We begin our analysis by acknowledging the legal principles that govern these appeals.  In the absence of an evidentiary hearing, we review de novo both

13

the factual inferences drawn from the record by the PCR judge and the judge's legal conclusions. State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020); State v. Nash, 212 N.J. 518, 540 (2013).

Given our recitation and review of the record in the context of the combined issues on appeal, we address the consequences of the prior adjudications related to defendant's contentions in these appeals.

Rule 3:22-5 reads: "A prior adjudication upon the merits of any ground for relief is conclusive[,] whether made in the proceedings resulting in the conviction[,] or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings."

Specifically, whether the State withheld evidence sought—or, more aptly, wished—by defendant has already been addressed and rejected by the trial court, the PCR court, and this court. Generally, issues previously disposed of by the courts cannot be relitigated. See State v. Marshall, 173 N.J. 343, 351, 361 (2002) (explaining that Rule 3:22-5 precludes the relitigation during post-conviction relief proceedings of issues "identical or substantially equivalent to that adjudicated previously"); see generally In re Liquidation of Integrity Ins. Co./Celotex Asbestos Tr., 214 N.J. 51, 67 (2013) ("Collateral estoppel bars 'the

14

relitigation of an issue that has already been litigated and resolved in a prior proceeding.'") (internal citations omitted).

However, preclusive doctrines are subject to exceptions. See State v. Hannah, 248 N.J. 148, 178-79 (2021) (explaining that Rule 3:22-5 will bow to the court's power to correct "fundamental injustice"); Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521-23 (2006) (delineating general and specific equitable exceptions to issue preclusion).

Having thoroughly reviewed the record, we discern nothing that would warrant an exception to doctrines of preclusion regarding any of the issues on appeal. Nothing in the record, either directly or by inference, supports defendant's assertion about the existence of a surveillance video from the scene of the gas station homicide. Nor has any newly-discovered evidence been adduced. Likewise, we have carefully considered and reject defendant's argument that the trial court's jury instruction on self-defense resulted in an unfair trial.

In neither appeal do we perceive a fundamental injustice warranting a new trial or reversal. "The trial judge on defendant's motion may grant the defendant a new trial if required in the interest of justice." R. 3:20-1. "A motion for a new trial based on the ground of newly-discovered evidence may be made at any time

15

. . . ." R. 3:20-2.  As observed in our 2017 opinion, "there was overwhelming evidence of guilt."  State v. Clifton-Short, No. A-0197 (slip op. at 27).

We therefore affirm all orders on appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2388-23