# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2683-16T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

AQUIL MALIK, a/k/a MALIK
AQUIL,

     Defendant-Appellant.

_____

     Submitted September 26, 2018 – Decided December 10, 2018

     Before Judges Fuentes and Moynihan.

     On appeal from Superior Court of New Jersey, Law Division, Morris County, Indictment No. 15-04-0289.

     Cynthia H. Hardaway, attorney for appellant.

     Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (Erin Smith Wisloff, Supervising Assistant Prosecutor, and Paula C. Jordao, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Aquil Malik appeals from his conviction by jury of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(7) (count two) for which he was sentenced to a ten-year term subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2; convictions for first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(5) (count one) and second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1) (count four) were merged into count two.[1] Defendant argues:

> POINT I
>
> THE STATE'S TREATMENT OF DEFENDANT WITH RESPECT TO HIS PLEA OFFER WAS ARBITRARY AND ABUSIVE.
>
> POINT II
>
> THE TRIAL PROSECUTOR'S REMARKS IN OPENING AND ON SUMMATION WERE IMPROPER.
>
> POINT III
>
> THE COURT ERRED IN NOT ALLOWING DEFENDANT HIS RIGHT TO CONFRONT THE [WITNESS (A.E.)] WITH RESPECT TO HER PRIOR INCONSISTENT TESTIMONY.

---

[1] Count three charging second-degree conspiracy to commit aggravated sexual assault, N.J.S.A. 2C:5-2; N.J.S.A. 14-2(a)(5), was dismissed at the State's request.

A-2683-16T2

POINT IV

THE COURT'S DENIAL OF DEFENDANT'S REQUEST FOR A NEW TRIAL DUE TO THE STATE'S FAILURE TO PRESERVE AND TURN OVER EXCULPATORY EVIDENCE WAS IN ERROR.

POINT V

THE JURY INSTRUCTIONS WERE MISLEADING AND INCOMPLETE.

POINT VI

THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.

POINT VII

DEFENDANT'S SENTENCE SHOULD BE VACATED.

We are unpersuaded by any of these arguments and affirm.

Defendant and his codefendants, Tyrec D. Phillips and DeQuan McDaniel, were charged in a single indictment[2] with sexually assaulting seventeen-year-old A.E. in McDaniel's car on September 4, 2011. In the counts charging aggravated sexual assault, the State alleged defendants, while aided or abetted by one or more other persons, used physical force or coercion to sexually

---

[2] The indictment superseded an indictment that was not included in the record on appeal.

penetrate A.E. (count one) and committed acts of penetration upon A.E., whom they "knew or should have known was physically helpless" because she was highly intoxicated (count two). In the sexual assault count (count three) the State alleged all three defendants committed sexual penetration by using physical force or coercion without severe personal injury having been sustained by A.E.

In a pre-indictment plea offer, extended in December 2013 under the first indictment, the State agreed to recommend a third-degree prison sentence ranging from three to five years if defendant pleaded guilty to second-degree sexual assault.[3] Status conference orders for Phillips and McDaniel set forth the same plea offer, although specific sentencing ranges were not set forth in either document.[4]

---

[3] The plea agreement also required the imposition of Megan's Law, N.J.S.A. 2C:7-1 to -23, conditions, parole supervision for life and parole ineligibility pursuant to NERA.

[4] The State included in its appendix the trial assistant prosecutor's certification providing that: (1) the same pre-indictment offer was extended to all three codefendants; (2) on August 4, 2016, defendant's prior counsel counter-offered – and the State accepted – that defendant would agree to a three-to-five-year sentence on a plea to second-degree conspiracy to commit aggravated sexual assault which would not include the imposition of Megan's Law conditions. The assistant prosecutor continued, prior to entering a plea defendant hired his present counsel who counter-offered that defendant would plead guilty to an

Phillips pleaded guilty in May 2016 to count three of the superseding indictment, amended to charge third-degree conspiracy to commit criminal sexual contact, N.J.S.A. 2C:5-2(a)(1); N.J.S.A. 2C:14-3(b), admitting he planned with his codefendants to purposely supply alcohol to A.E. "in order to get her drunk to sexually assault her." He also admitted to taking A.E. to "a remote location" and, knowing that she was "drunk and helpless," acted as a lookout while his codefendants had vaginal intercourse with the victim without her consent. He was sentenced in accordance with the plea agreement to a one-year probationary term with nineteen days of jail credit.

McDaniel pleaded guilty in June 2016 to count two of the superseding indictment amended to charge third-degree conspiracy to commit aggravated sexual contact, N.J.S.A. 2C:5-2(a)(1); N.J.S.A. 2C:14-3(a). He admitted that he agreed with his codefendants to commit an act of aggravated sexual contact upon A.E., and knowing she was helpless and incapacitated by alcohol consumption and unable to consent to anyone touching her breasts, he drove her to a location

unspecified charge in return for a probationary sentence. This certification, dated December 13, 2017, was not part of the trial record. Defendant did not file a reply brief acknowledging the contents of the certification. The State did not move to supplement the appellate record under Rule 2:5-5. We will not consider same in our review. Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 2:5-4 (2018).

so that he could commit that act for his own sexual gratification. He was also sentenced to a one-year probationary term with 171 days of jail credit and ordered to complete fifty hours of community service.

Defendant argues "the State unfairly and unjustifiabl[y] singled [him] out for harsher punishment for offenses arising out of the exact same conduct and proofs as his codefendants." In other sentencing-related arguments, he contends the trial court erred by failing to apply mitigating factors two, five, seven, nine, twelve and thirteen and by failing to find "that imprisonment under the facts of this case would be a serious injustice overriding any . . . need to deter conduct by others," citing N.J.S.A. 2C:44-1(d).

We review sentencing determinations with a deferential standard, see State v. O'Donnell, 117 N.J. 210, 215 (1989), and will disturb a trial court's sentence only in instances where the sentencing guidelines were not followed, the aggravating and mitigating factors found by the trial judge were unsupported by the evidence, or the judge's application of the sentencing guidelines rendered the sentence clearly unreasonable, State v. Roth, 95 N.J. 334, 364-65 (1984). Under that deferential standard, only when the facts and law show "such a clear error of judgment that it shocks the judicial conscience" will we modify a sentence on appeal. Id. at 363-64.

Our analysis of a sentence is heightened, however, when a defendant claims sentencing disparity. Our Supreme Court observed in State v. Roach, 146 N.J. 208, 231-32 (1996) (citations omitted) (quotation marks omitted),

> uniformity [is] one of the major sentencing goals . . . [as] there can be no justice without a predictable degree of uniformity in sentencing. . . . The central theme of our sentencing jurisprudence is the exercise by the courts of a structured discretion designed to foster less arbitrary and more equal sentences.

The Court recognized the legislative basis for that structure:

> To minimize disparity, a sentencing court exercises its discretion in the structured setting prescribed by the [Criminal] Code. Our statutes provide a "'general framework to guide judicial discretion in imposing sentences' to ensure that similarly situated defendants [do] not receive dissimilar sentences." State v. Natale, 184 N.J. 458, 485 (2005). When an ordinary term of incarceration is warranted, N.J.S.A. 2C:43-6(a) prescribes statutory ranges for that term based upon the degree of the offense: ten to twenty years for a first-degree crime, five to ten years for a second-degree crime, three to five years for a third-degree crime, and up to eighteen months for a fourth-degree crime. N.J.S.A. 2C:43-6(a)(1) to (4).
>
> [State v. Fuentes, 217 N.J. 57, 72 (2014) (second alteration in original).]

The purpose of the statutory guidelines is to promote fairness and public confidence in the "even handed justice of our system." Roach, 146 N.J at 232-

7

33 (quoting State v. Hicks, 54 N.J. 390, 391 (1969)). The ultimate determination "is whether the disparity is justifiable or unjustifiable." Id. at 233.

Although we look to the Court's decision in Roach for guidance in analyzing this disparity claim, we are mindful its facts and those in this case are dissimilar. In Roach, all defendants were sentenced after trials; none of the defendants accepted plea offers. Phillips and McDaniel forwent trial and pleaded guilty.

The trial court here found defendant and his codefendants were similarly situated in that each had unwanted sexual intercourse with the helpless victim and were "equally culpable," for the assaults. When the State explained the reasons for extending the codefendants' plea agreements and for declining to offer similar plea terms to defendant, the trial court took umbrage that the State re-indicted all defendants with full knowledge of the strengths and weaknesses of its cases against all three.

Though the State may have had sufficient evidence justifying its decision to obtain the superseding indictment against all three defendants, it was also entitled to discretely assess the proofs necessary to obtain a conviction of each defendant in formulating plea offers. "The decision whether to offer a plea bargain is a matter of prosecutorial authority and discretion." State v. Gruber,

A-2683-16T2

362 N.J. Super. 519, 537 (App. Div. 2003). "[A] defendant has no legal entitlement to compel a plea offer or a plea bargain; the decision whether to engage in such bargaining rests with the prosecutor." State v. Williams, 277 N.J. Super. 40, 46 (1994).

The record supports the State's assertion that the proofs against defendant were stronger than those against the codefendants. A.E.'s first perception when she regained consciousness in the back seat of the vehicle was defendant atop her, vaginally penetrating her. Defendant was the only one of the three with whom the victim had a Facebook exchange and two consensual-telephonic intercepts. Defendant's statement to the police was more self-inculpatory than those given by the codefendants.

Although the trial court felt all three codefendants were equally culpable, the State was entitled to gauge its plea offer on the relative strength of the proofs in each case. Under the circumstances, we do not perceive that the State abused its discretion in declining to lower the three-to-five-year offer initially tendered to defendant, but lowering that same offer to each of the codefendants, even if it resulted in a greater sentence imposed on defendant after trial – a sentence at the very bottom of the range for a first-degree crime. "[A] sentence of one defendant not otherwise excessive is not erroneous merely because a co-

defendant's sentence is lighter." Hicks, 54 N.J. at 391; see also Roach, 146 N.J. at 232. As the trial court observed at the sentencing proceeding, "[i]t's not that [defendant's] offense deserves less, it's that the co[] defendants deserved more . . . ." The sentencing disparity here was justified.

We give no credence to defendant's contention that the court erred in determining the sentence. The court carefully reviewed and set forth its findings for all proposed aggravating and mitigating factors. Defendant argues mitigating factors seven and twelve applied because he had no prior criminal history and led a law-abiding life for a substantial period of time, and because he implicated his codefendants in his statements, respectively; he offers no explanation for his averment that mitigating factors two, five, nine and thirteen should have been applied.[5]

---

[5] The mitigating factors at issue, set forth in N.J.S.A. 2C:44-1(b), are:

> (2) The defendant did not contemplate that his conduct would cause or threaten serious harm;
>
> . . . .
>
> (5) The victim of the defendant's conduct induced or facilitated its commission;
>
> . . . .

The court, which also presided over the trial, found that under the circumstances of the case defendant "should have contemplated something" when he sexually assaulted the victim. The court could not find on the record before it that the victim facilitated the crime. And, because it found a risk that defendant would commit another offense, N.J.S.A. 2C:44-1(a)(3) (aggravating factor three), based on defendant's arrest and conditional discharge for a shoplifting offense he committed while released on bail for the sexual assault charges, the court did not find that the defendant's character and attitude indicated he was likely to commit another offense.

---

(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense;

. . . .

(9) The character and attitude of the defendant indicate that he is unlikely to commit another offense;

. . . .

(12) The willingness of the defendant to cooperate with law enforcement authorities;

(13) The conduct of a youthful defendant was substantially influenced by another person more mature than the defendant.

11

That conditional discharge also buttressed the court's "find[ing] that there's no prior criminal activity." See State v. Rice, 425 N.J. Super. 375, 382 (App. Div. 2012) (holding a sentencing court did "not abuse its discretion by refusing to find mitigating factor seven based on charges that did not result in convictions"). We also note the court's description of this factor as "a toss-up," indicating the factor was of little weight. The court also rejected defendant's contention that he cooperated with law enforcement, finding defendant's statement to the police during the investigation of the crime did not warrant that mitigating factor. See State v. Read, 397 N.J. Super. 598, 613 (App. Div. 2008) (questioning whether a confession qualifies as a mitigating factor, and holding that a defendant's confession that provided a limited benefit to the State was not entitled to any substantial weight in determining a sentence). The lenient plea offers to the codefendants make obvious that defendant's statement provided no benefit to the State.

Defendant did not propose mitigating factor thirteen during the sentencing proceedings. The court's findings in rejecting mitigating factor three, however, also warrant rejection of this mitigating factor: "[Defendant] may have been urged on by his buddies to join in [the sexual assault], it's your turn, but that's

not strong provocation . . . ." All of the court's findings were supported by the evidence.

After a thorough analysis, the court found the risk that defendant would commit another offense and the need to deter defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9), as aggravating factors; and that defendant's conduct was the result of circumstances unlikely to recur, N.J.S.A. 2C:44-1(b)(8), as a mitigating factor. In light of the balance of the aggravating and mitigating factors, the judge concluded the mitigating factor did not substantially outweigh the aggravating factors.

The court also concluded that it could not find "that imprisonment would constitute a serious injustice overriding the need for deterrence" after "consider[ing] everything in light of the trial that the [c]ourt presided over"; it declined to find the presumption of imprisonment was overcome. N.J.S.A. 2C:44-1(d).[6] The record reflects the court's careful consideration of this issue.

_____

[6] Subsection (d) provides in part:

> The court shall deal with a person who has been convicted of a crime of the first or second degree . . . by imposing a sentence of imprisonment unless, having regard to the character and condition of the defendant, it is of the opinion that his imprisonment would be a

13

The tenor of the court's lengthy sentencing remarks reflect that it was inclined to reduce the disparity between defendant's sentence and those of his codefendants. The court, however, adhered to the sentencing guidelines and its decision was clearly reasonable. Defendant was not so "idiosyncratic," and the record does not reflect circumstances that were "truly extraordinary and unanticipated," that imprisonment amounted to a serious injustice. State v. Jabbour, 118 N.J. 1, 7 (1990) (first citing State v. Jarbath, 114 N.J. 394, 408 (1989), and then quoting Roth, 95 N.J. at 358).

The ten-year sentence imposed was the minimum for a first-degree crime, N.J.S.A. 2C:43-6(a)(1), so the court's decision not to accept a mitigating factor, even if applicable, does not render the sentence unreasonable. The sentence conforms to the statutory framework and does not constitute an abuse of discretion; it does not shock the judicial conscience and will not be disturbed. State v. Cassady, 198 N.J. 165, 184 (2009) (affirming a sentence because it did not shock the judicial conscience).

In Point II, defendant argues for the first time on appeal that two comments in the assistant prosecutor's opening and closing statements – that

serious injustice which overrides the need to deter such conduct by others.

14

A.E. was sexually assaulted by defendant and the codefendants – deprived him of a fair trial and warrant reversal.

In her opening statement, the assistant prosecutor told the jury that the night A.E. was assaulted "was the worst night of her life" because she was assaulted by three males who "took turns penetrating her vagina and her mouth while she was highly intoxicated, in and out of consciousness, and unable to consent to such actions." We quote that portion of the assistant prosecutor's summation that defendant set forth in his merits brief:

> On September [fourth, A.E.] was sexually assaulted by this defendant and two other individuals . . . [A.E.] that night was driven to an isolated area. She was stripped of her clothing. Her mouth was wiped out by baby wipes, and then there three individuals continued to strip her [of] her dignity by continuing to sexually assault her . . . .

Defendant contends the statements were "inaccurate legal assertion[s]" because the assistant prosecutor knew the codefendants pleaded guilty to conspiracy charges – not sexual assault. He also argues the comments "grouped the three defendants together in [one] concerted effort" and "could have unfairly led the jurors to conclude[] that if [the codefendants], who were not at the trial, had already been convicted of sexual assault then defendant as part of that group must also be guilty of that same offense."

We review arguments raised for the first time on appeal under a "plain error" standard which requires reversal only if the error was "clearly capable of producing an unjust result." R. 2:10-2; see also State v. Macon, 57 N.J. 325, 337-38 (1971). A conviction will be reversed under this standard only if the error is "sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." State v. Daniels, 182 N.J. 80, 95 (2004) (alteration in original) (quoting Macon, 57 N.J. at 336). "The mere possibility of an unjust result is not enough." State v. Funderburg, 225 N.J. 66, 79 (2016) (citing State v. Jordan, 147 N.J. 409, 422 (1997)).

Prosecutorial misconduct does not warrant reversal unless it was "clearly and unmistakably improper" and was "so egregious that it deprived the defendant of a fair trial." State v. Wakefield, 190 N.J. 397, 438 (2007) (first quoting State v. Papasavvas, 163 N.J. 565, 625 (2000) and then quoting State v. Smith, 167 N.J. 158, 181-82 (2001)). In determining whether a prosecutor exceeded these bounds, we must "consider the tenor of the trial and the responsiveness of counsel and the court to the improprieties when they occurred." State v. Timmendequas, 161 N.J. 515, 575 (1999) (citing State v. Scherzer, 301 N.J. Super. 363, 433 (App. Div. 1997)). When a defendant does not object to any of the prosecutors' opening and closing remarks, the remarks

16

generally "will not be deemed prejudicial." Id. at 576 (citing State v. Ramseur, 106 N.J. 123, 323 (1987)). "The failure to make a timely objection not only indicates the defense did not believe the remarks were prejudicial at the time they were made, but also deprives the judge of the opportunity to take the appropriate curative action." State v. Murray, 338 N.J. Super. 80, 87-88 (App. Div. 2001) (citing Timmendequas, 161 N.J. at 576).

"Prosecutors 'are afforded considerable leeway in making opening statements and summations.'" State v. Echols, 199 N.J. 344, 359-60 (2009) (quoting State v. Williams, 113 N.J. 393, 447 (1988)). "A prosecutor's opening statement 'should provide an outline or roadmap of the State's case' and 'should be limited to a general recital of what the State expects, in good faith, to prove by competent evidence.'" State v. Land, 435 N.J. Super. 249, 269 (App. Div. 2014) (emphasis omitted) (quoting State v. Walden, 370 N.J. Super. 549, 558 (App. Div. 2004)). With regard to their summations, prosecutors "are expected to make vigorous and forceful closing arguments to juries." State v. Frost, 158 N.J. 76, 82 (1999) (citing State v. Harris, 141 N.J. 525, 559 (1995)). Still, a prosecutor's summation "is limited to commenting upon the evidence and the reasonable inferences to be drawn therefrom." State v. Swint, 328 N.J. Super. 236, 261 (App. Div. 2000) (citing State v. Feaster, 156 N.J. 1, 58-59 (1998)).

Applying these standards, we discern no impropriety in the prosecutor's comments. Nothing in the prosecutor's summation was outside of the evidence presented and she directly addressed defense counsel's summation which repeatedly referenced the actions of all three males. During her summation, defense counsel recounted the evidence adduced at trial: "We heard about group sex. We heard about training, three guys, one girl. Menage a trois, orgies, trains, group sex . . . ." She graphically described the codefendants' sex acts in arguing that A.E. was not physically helpless and consented to sex. She distanced defendant from the codefendants' actions, describing him as a bystander "outside of the car watching" the codefendants, simultaneously arguing that A.E.'s protestations to the codefendants about their actions showed she was "awake and she's making decisions about what it is that she wants to do and what she doesn't want to do."

The prosecutor's comments did not imply that the codefendants had already been convicted of sexual assault. The issues considered at the trial warranted mention of the codefendants' acts. The codefendants were alleged to have aided and abetted defendant in committing sexual penetration by using physical force or coercion in connection with the charges in the first count of the indictment. The codefendants' actions were also relevant to the State's

18

contention that A.E. was physically helpless at the time of the assaults, and that she refused to engage in sex with each one of them, especially in light of defense counsel's summation regarding those issues. Although we see no reason for the assistant prosecutor to have commented about the victim being stripped of her dignity, her fleeting comments were not so egregious as to deprive defendant of a fair trial. See Wakefield, 190 N.J. at 437-38.

Furthermore, the court twice instructed the jury that counsel's comments were not controlling. At the outset of the trial, the court instructed the jury that "whatever is said in the opening statements" and summations is "not evidence and you can't consider it as such." It reiterated that instruction after summations, telling the jury they had to "rely solely on [their] understanding and [their] recollection of the evidence." Given the considerable leeway afforded prosecutors in making opening and closing statements, and the court's repeated instruction to the jury that the attorneys' remarks were not evidence, the comments – to which no objection was raised – do not provide grounds for reversal. See Echols, 199 N.J. at 361 (citing Ramseur, 106 N.J. at 323). The balance of defendant's arguments – regarding the variance between the charges to which the codefendants pleaded guilty and their actions as stated during the trial – lack sufficient merit to warrant discussion here. R. 2:11-3(e)(2).

Another trial error alleged by defendant in Point III is the court's denial of his request to impeach A.E.'s credibility with a prior inconsistent statement. The State adduced A.E.'s testimony that, during a police-arranged consensual intercept between her and defendant eight months after the assault, she lied pursuant to police instruction when she told defendant she had a sexually transmitted disease (STD). Defense counsel confirmed on cross-examination that A.E. lied during the intercept about the STD. Counsel then attempted to cross-examine A.E. about her testimony during defendant's juvenile waiver hearing.[7] At that 2013 hearing, A.E. was asked, "i[n] the consensual intercept you mentioned that you had an STD[.] Did you have an STD?" A.E. answered affirmatively. The State objected to that question, arguing defendant was prohibited from presenting evidence of the victim's sexual conduct pursuant to the Rape Shield Law. N.J.S.A. 2C:14-7. At a mid-trial hearing,[8] A.E. confirmed the accuracy of the pertinent question and answer at the waiver hearing. When asked, "[p]rior to September 4[], 2011, when this incident occurred, did you

---

[7]  The record on appeal does not include the juvenile-waiver transcript, but the trial court read the transcript into the record.

[8]  The trial court noted the defense did not follow the dictates of the statute and seek a pre-trial court order. N.J.S.A. 2C:14-7(a). The court held a hearing mid-trial out of the presence of the jury after hearing initial arguments at sidebar.

20

have the STD prior to this incident or after the incident?" A.E. answered, "After."

Following our Supreme Court's directive, we will defer to and uphold a trial court's evidentiary ruling "absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment." State v. Perry, 225 N.J. 222, 233 (2016) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "An appellate court applying this standard should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" Ibid. (quoting State v. Marrero, 148 N.J. 469, 484 (1997)). That standard governs our analysis of the trial court's denial of defendant's attempt to cross-examine A.E. about her statement at the waiver hearing about she had an STD.

Although the trial court did not determine that the evidence sought to be introduced involved the victim's sexual conduct, there can be no argument that issue – the contraction of a sexually transmitted disease – involved "conduct or behavior relating to the sexual activities of the victim." N.J.S.A. 2C:14-7(f). The introduction of sexual-conduct evidence is allowed pursuant to the Rape Shield Law

> only if it is "relevant and highly material, meets the requirements of subsections (c) and (d) of [the statute],"

and its probative value "substantially outweighs its collateral nature or the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the victim." N.J.S.A. 2C:14-7(a). Under N.J.S.A. 2C:14-7(c) and (d), evidence of past sexual conduct is only relevant if "it is material to proving the source of semen, pregnancy or disease[,]" N.J.S.A. 2C:14-7(c), or "if it is probative of whether a reasonable person, knowing what the defendant knew at the time of the alleged offense, would have believed that the alleged victim freely and affirmatively" consented. N.J.S.A. 2C:14-7(d).

[Perry, 225 N.J. at 234-35 (alterations in original) (footnotes omitted).]

The trial court, in determining the admissibility of sexual-conduct evidence, was required to follow a two-step analysis, first ascertaining if the evidence was "relevant and necessary to resolve a material issue in light of the other evidence that is available to address that issue." Id. at 236-37 (citing State v. Garron, 177 N.J. 147, 172-73 (2003)). If the court deemed the evidence relevant and necessary, it had to decide if the probative value of the evidence "outweigh[ed] the prejudicial effect of the victim in the context of the Rape Shield Law." Id. at 237 (citing State v. Budis, 125 N.J. 519, 532-34 (1991)).

The trial court ruled that although the evidence was marginally relevant, its probative value did not outweigh its prejudicial effect because there was no evidence in the record from which the court could conclude that the victim was

lying at the prior hearing when she said she had an STD. We see no abuse of discretion in the court's decision.

"The probative value of sexual conduct covered by N.J.S.A. 2C:14-7 'depends on clear proof that [the conduct] occurred, that [it is] relevant to a material issue in the case, and that [it is] necessary to a defense.'" State v. J.A.C., 210 N.J. 281, 300 (2012) (alterations in original) (quoting Budis, 125 N.J. at 533). The trial court's finding that A.E. had an STD is supported by competent evidence. The court pointed to A.E.'s testimony during the mid-trial hearing that she had the STD after the September 2011 incident. The court concluded there was insufficient evidence that, when she testified at the waiver hearing in 2013, A.E. lied when she said she had an STD, and reasoned that she may not have had an STD in 2012 during the intercept but contracted one before her 2013 testimony. In other words, although she admitted during the waiver hearing that she had an STD, that testimony did not establish that she had an STD when the intercept occurred.

In determining the prejudicial impact of sexual-conduct evidence, courts may consider "the trauma to the victim, the degree to which the evidence sought to be admitted would invade the victim's privacy, the 'impact of a given ruling on a victim reporting sexual abuse,' as well as the need to guard victims from

A-2683-16T2

excessive cross-examination and prevent undue jury confusion." Perry, 225 N.J. at 237 (quoting J.A.C., 210 N.J. at 300). Even if A.E. had an STD, that evidence did nothing to prove the central defense theories: the victim's awareness and consent.[9] As defense counsel admitted during the mid-trial hearing, the only purpose in asking A.E. about her statement at the waiver hearing was "just to put out an inconsistency to attack [A.E.'s] credibility." A.E. had already admitted that she lied to defendant when she told him during the intercept, at the detective's behest, that she had an STD. Moreover, as the Perry Court observed, questioning a sexual assault victim about sexual-conduct evidence contravenes the Legislature's intent in enacting the rape Shield Law – to protecting a sexual assault victim's privacy.[10] See Perry, 225 N.J at 244-46. Allowing the cross-

---

[9] Although the trial court found that the evidence was relevant, the basis for the court's finding is not clear. We gather from the colloquy during the hearing on this matter that the relevance found pertained to the victim's credibility. The State did not file a cross-appeal so we leave that ruling undisturbed.

[10] The Court cited to several authorities:

> See Assemb. Judciary, Law and Pub. Safety Comm., Statement to Assemb. Bill No. 677, at 1 (Jan. 20, 1994), as reprinted in N.J.S.A. 2C:12-7 (2013) ("It is in the public interest to protect the privacy of the victim, as opposed to allowing the defendant to freely examine the victim's past when the examination serves no material or relevant evidentiary or constitutional purpose."); see

A-2683-16T2

examination would have left the jury to speculate about the source of the STD, and would have called into question A.E.'s sexual activities with others – an unwarranted privacy invasion, especially considering the lack of clear proof that she had an STD and the dubious value of that evidence to the defense. The court properly proscribed defendant's cross-examination of A.E. regarding her statement during the waiver hearing.

In Point IV, defendant argues the trial court's jury instruction regarding the physical force or coercion portion of aggravated sexual assault as charged in count one of the indictment; and the court's failure to add an instruction regarding the mental incapacity of the victim when it charged the jury on aggravated sexual assault as alleged in count two. Defendant states in his merits

---

also J.A.C., 210 N.J. at 297 ("It is clear from this series of amendments progressively strengthening N.J.S.A. 2C:14-7, that the Legislature's policy is to direct the focus of sexual assault trials toward the alleged crime, and away from the lifestyle of the victim."); see also Garron, 177 N.J. at 165 ("The [Rape] Shield [Law] is intended to deter the unwarranted and unscrupulous foraging for character-assassination information about the victim. The Statute does not permit introduction of evidence of the victim's past sexual conduct to cast the victim as promiscuous or of low moral character.").

[Perry, 225 N.J at 244-46.]

brief that he requested the trial court to charge "the jury with the mentally incapacitated definition" and withdrew the request "after the [c]ourt indicated its unwillingness to honor said request because it did not see how it would assist defendant and the State had not charged mentally incapacitated in the indictment." He does not, however, cite to any portion of the record that establishes his request, the court's declination or his withdrawal. See Spinks v. Twp. of Clinton, 402 N.J. Super. 465, 474-75 (App. Div. 2008) (imposing a duty on parties to refer to "specific parts of the record to support their argument" so this court did not have to scour the record to find same (citing State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977))). Indeed, at the charge conference on November 3, 2016 defense counsel said she had no objection to the model jury instructions for both counts.

Inasmuch as defendant did not comply with Rule 1:7-2,[11] our review is plain error. R. 2:10-2. "A claim of deficiency in a jury charge to which no

---

[11] The Rule provides:

> For the purpose of reserving questions for review or appeal relating to rulings or orders of the court or instructions to the jury, a party, at the time the ruling or order is made or sought, shall make known to the court specifically the action which the party desires the court to take or the party's objection to the action taken and

objection is interposed 'will not be considered unless it qualifies as plain error

. . . .'" State v. R.B., 183 N.J. 308, 321 (2005) (quoting State v. Hock, 54 N.J. 526, 538 (1969)). In this context, "plain error requires demonstration of '[l]egal impropriety . . . prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Burns, 192 N.J. 312, 341 (2007) (alteration in original) (quoting Jordan, 147 N.J. at 422). Defendant's failure to pose an objection to the jury instructions "constitutes strong evidence that the error belatedly raised . . . was actually of no moment." State v. White, 326 N.J. Super. 304, 315 (App. Div. 1999).

Defendant argues that the instruction – which included the phrase, "[y]ou should not speculate as to what the alleged victim thought or desired, or why

---

the grounds therefor. Except as otherwise provided by [Rule] 1:7-5 and [Rule] 2:10-2 (plain error), no party may urge as error any portion of the charge to the jury or omissions therefrom unless objections are made thereto before the jury retires to consider its verdict, but opportunity shall be given to make the objection in open court, in the absence of the jury. A party shall only be prejudiced by the absence of an objection if there was an opportunity to object to a ruling, order or charge.

she did not resist or protest," – "unfairly led the jury to believe that it could not consider evidence that [A.E.] affirmatively said yes in consenting to sexual activity with defendant." We decline to simply consider the abbreviated portion of the charge set forth in defendant's merits brief. Our Supreme Court "has repeatedly held that portions of a charge alleged to be erroneous cannot be dealt with in isolation but the charge should be examined as a whole to determine its overall effect." State v. Wilbely, 63 N.J. 420, 422 (1973). "The test is to examine the charge in its entirety, to ascertain whether it is either ambiguous and misleading or fairly sets forth the controlling legal principles relevant to the facts of the case." State v. Labrutto, 114 N.J. 187, 204 (1989).

When instructing the jury on the first count, the trial court did not deviate from the model charge. That charge, particularly the portion omitted from defendant's merits brief, instructed the jury on how a victim may express consent to a sexual act. The jury was not precluded from considering whether the victim consented to sexual penetration by defendant; in fact, it was instructed to consider whether she consented. The charge on the first count accurately set forth the law that was applicable to the facts of this case.

Whether defense counsel made or withdrew a request for the judge to add the definition of "mentally incapacitated," there was no rational basis to include that instruction. The applicable statute, N.J.S.A. 2C:14-2(a)(7), provides:

> An actor is guilty of aggravated sexual assault if he commits an act of sexual penetration with another person . . . whom the actor knew or should have known was physically helpless . . . or mentally incapacitated, or had a mental disease or defect which rendered the victim temporarily or permanently incapable of understanding the nature of his conduct, including, but not limited to, being incapable of providing consent.

The indictment alleged only that defendant sexually penetrated the victim who he knew or should have known was physically helpless. The proofs of A.E.'s voluntary consumption of alcohol and her intoxicated state were offered to prove that she met the definition of physically helpless: a "condition in which a person is unconscious or is physically unable to flee or is physically unable to communicate unwillingness to act." N.J.S.A. 2C:14-1(g). It would have been inappropriate for defendant to face an aggravated sexual assault charge alleging he penetrated a victim who he knew or should have known was mentally incapacitated in that the State offered no proof that A.E. met that definition:

> "Mentally incapacitated" means that condition in which a person is rendered temporarily incapable of

understanding or controlling his conduct due to the influence of a narcotic, anesthetic, intoxicant, or other substance administered to that person without his prior knowledge or consent, or due to any other act committed upon that person which rendered that person incapable of appraising or controlling his conduct.

[N.J.S.A. 2C:14-1(i).]

There was no evidence that A.E. ingested any substance without her knowledge or consent, or under any situation of which she did not have knowledge and control. Even if requested by defendant, a jury instruction on that element, of which there was no proof, would have been improper and confusing to the jury.

Defendant argues the trial court erred in denying his motion for a new trial which was based on the State's failure to preserve text messages between A.E. and defendant on the day of the consensual intercept and its failure to provide defendant with discovery of text messages it did record.

A.E. made two consensual-intercept calls to defendant. When A.E. attempted to elicit from defendant what occurred during the assault, he told her that he would prefer to text her because he was in a car with other people and did not "want to put all [her] business out" by talking in front of them. After the two exchanged texts, a second call was completed. Although both calls were recorded and turned over to defense counsel, photographs taken by police of text

messages sent by defendant between the first and second calls were not. The photographed texts read:

"we trained you"

"um but you ain't like tyrec you was off me and dequan"

"me tyrec dequan"

"I though you was up honestly bcuz you was talking 2 me but idk they ain't think you was passed out either tho I think"

"Nah I ain't do that maybe dequan or tyrec did"

"what's sup"

Defendant claims the Morristown Police Department and Morris County Prosecutor's Office copied text messages from A.E.'s phone and "purposely and inexplicably selected only portions of the text messages to preserve as evidence. The missing unrecorded text messages by defendant may have contained potentially exculpatory statements," and the State's bad-faith failure to preserve that evidence violated his due process rights, citing <u>Illinois v. Fisher</u>, 540 U.S. 544 (2004) (per curiam) and <u>Arizona v. Youngblood</u>, 488 U.S. 1 (1988) (per curiam).[12]

---

[12] In <u>Fisher</u>, the United States Supreme Court held that the failure to preserve potentially useful evidence – as opposed to exculpatory evidence – which might

Defendant also contends the State's failure to provide the recorded text messages in discovery was a <u>Brady</u> violation,[13] inasmuch as defendant's text – in which he told A.E. he "thought [she] was up honestly bcuz [she] was talking 2 [him,]" and that he did not think she was passed out – could have been used to buttress his trial testimony on direct examination after the assistant prosecutor cross-examined him on portions of his intercepted statement in which he ostensibly admitted he thought A.E. was passed out.

A motion for a new trial is addressed to the sound discretion of the trial court, and we do not lightly interfere with the exercise of that discretion. <u>State v. Russo</u>, 333 N.J. Super. 119, 137 (App. Div. 2000). We will not reverse the decision "unless it clearly appears that there was a miscarriage of justice under the law." <u>State v. Afanador</u>, 134 N.J. 162, 178 (1993) (quoting <u>R.</u> 2:10-1).

First addressing the texts defendant alleges were not preserved, the record does not support that they were potentially useful or exculpatory. Indeed, there is no proof of the contents of any non-preserved texts. Defendant contends only

exonerate a defendant does not violate due process unless the defendant "can show bad faith on the part of the police." <u>Fisher</u>, 540 U.S. 547-48 (emphasis omitted) (quoting <u>Youngblood</u>, 488 U.S. at 58).

[13] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (holding the prosecution's suppression of material, exculpatory evidence violates a defendant's due process rights).

that the "missing unrecorded text messages by defendant <u>may have contained</u> potentially exculpatory statements." (emphasis added). Further, defendant posits only that the State's failure to preserve all of defendant's texts deprived him of the opportunity to "enhanc[e] and rehabilitat[e] his credibility," which he says was sullied by his use of "obscenities and detailed graphic sexually charged language" during the second intercepted call, in contrast to his "clean, concise and unequivocal" language in the text responses the police did record. He continues, "it can easily be inferred" A.E. or the police "implored him via text to tell them everything that occurred in graphic detail without regard for niceties," and that the police prompted his use of the language used during the second call. By failing to preserve all of the text messages, he argues, "the State deprived defendant of the fair chance to present a complete and meaningful defense thereby, unfairly slanting the case in their favor in violation of defendant's constitutional rights."

First, defendant offers no proof from which an inference can be drawn that the language he used in the intercept was not his. His argument that the unpreserved texts were free from salacious language is based on a bald assertion. Further, defendant could have made his point using the six texts that were

provided, although the significance of such a ploy is of dubious materiality to his defense.

Nor has defendant met his burden of proving the State failed in bad faith to preserve the texts. See State v. Mustaro, 411 N.J. Super. 91, 103 (App. Div. 2009) (holding if a defendant can show only that lost evidence was potentially useful or exculpatory, a due process violation can be shown by "establishing that the evidence was destroyed in bad faith"). Defendant argues there was "no plausible reason why law enforcement preserved some, but neglected to preserve other portions of defendant's text messages other than that it sought to deprive defendant of their exculpatory value." Defendant neither offers nor points to any evidence that establishes a bad faith reason why the police photographed only six text messages. The detective who photographed those texts did not memorialize his actions in a report. The messages were not used by the State; the assistant prosecutor denied knowledge of them. Moreover, defendant had knowledge of the contents of the texts he sent and received. As the trial court found, defendant was "best equipped to indicate what they contained" and defendant did not submit a certification regarding the contents of the unpreserved texts.

Turning next to the State's failure to turn over the six texts, we recognize the Due Process Clause obligates prosecutors to disclose evidence favorable to the defense of which they have actual or constructive knowledge. State v. Nelson, 155 N.J. 487, 498 (1998) (citing Calley v. Callaway, 519 F.2d 184, 223 (5th Cir.1975)). The obligation extends to evidence relevant to guilt or to punishment, Brady, 373 U.S. at 87, and to evidence that can be used to impeach the State's witnesses, United States v. Bagley, 473 U.S. 667, 676 (1985); see also State v. Knight, 145 N.J. 233, 245-46 (1996) (discussing both types of evidence). Where such evidence is withheld, a defendant is entitled to relief "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." State v. Marshall, 148 N.J. 89, 156 (1997) (quoting Knight, 145 N.J. at 246). "A 'reasonable probability' is one that is 'sufficient to undermine confidence in the outcome.'" State v. Martini, 160 N.J. 248, 269 (1999) (quoting Bagley, 473 U.S. at 682). It is not necessary for the defendant to prove that the trial prosecutor acted in bad faith. Brady, 373 U.S. at 87. Even when that prosecutor is ignorant of the facts, if they are known to the police, then knowledge is imputed to the prosecutor. Kyles v. Whitley, 514 U.S. 419, 437-38 (1995); see also Nelson, 155 N.J. at 498 (holding the Brady discovery rule applies to information of

which the State is actually or constructively aware, and agreeing with the Whitley Court's ruling that "[t]he individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf, including the police" (quoting Whitley, 514 U.S. at 437)).

Notwithstanding that the assistant prosecutor may not have been aware that the photographs of the six texts were in the State's file, they were. They should have been turned over with the other discovery to defendant's criminal-trial counsel. But we again recognize that defendant had knowledge of his own texts and could have supplied that information, or at least disclosed their existence, to his trial counsel.

We agree, nonetheless, with the trial court that disclosure and admission of the texts would not have impacted the trial result. The trial court found the evidence cumulative. Defendant's text about his belief that the victim was not passed out echoed defendant's trial testimony and defense that A.E. consented and was not physically helpless. Even if defendant established that the text was admissible as a prior consistent statement used to rebut the assistant prosecutor's charge of recent fabrication, see Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 3 on N.J.R.E. 607 (2018), defendant has not met his burden of showing a reasonable probability that that single text would have changed the

trial result, <u>Mustaro</u>, 411 N.J. Super. at 101. We also note that the judge gave an adverse inference charge regarding the State's failure to preserve the text.

We determine defendant's argument that, but for the <u>Brady</u> violation, he would not have testified to be without sufficient merit to warrant discussion in this opinion. <u>R.</u> 2:11-3(e)(2). He offers no legal basis to justify admission of the text if he did not testify.

In denying defendant's new trial motion, the trial court applied the prescriptions of <u>Rule</u> 3:20-1 which provides in part:

> The trial judge on defendant's motion may grant the defendant a new trial if required in the interest of justice. . . . The trial judge shall not . . . set aside the verdict of the jury as against the weight of the evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law.

We see no reason to disturb that ruling.

We see no merit in defendant's argument that a new trial was required because the verdict was against the weight of the evidence. An appellate court will not reverse the trial court's ruling on whether a jury verdict was against the weight of the evidence "unless it clearly appears that there was a miscarriage of justice under the law." <u>R.</u> 2:10-1; <u>Afanador</u>, 134 N.J. at 178. We will not disturb a jury verdict "[u]nless no reasonable jury could have reached [that] verdict

. . . ." Afanador, 134 N.J. at 178; see also State v. Jackson, 211 N.J. 394, 413-14 (2012) (noting that if "any trier of fact could rationally have found beyond a reasonable doubt that the essential elements of the crime were present[,]" there is no "miscarriage of justice" (quoting Afanador, 134 N.J. at 178)). The jury's verdict on all counts could have rested on A.E.'s testimony alone if they found her credible.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION