**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3354-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DWAYNE E. DRICKETTS,[1]

     Defendant-Appellant.

_____

Submitted September 14, 2022 – Decided October 18, 2022

Before Judges Haas and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 10-04-0439.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Matthew J. Platkin, Acting Attorney General, attorney for respondent (Debra G. Simms, Deputy Attorney General, of counsel and on the brief).

---

[1] Referenced in the record also as Dwayne Erick Dricketts and a/k/a "Pimp."

PER CURIAM

Defendant appeals from a June 9, 2021 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

Tried separately to a jury from his codefendant, Tyrell Jackson, defendant was convicted of first-degree murder, N.J.S.A. 2C:11-3(a)(1) or (2); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(a). On January 4, 2013, defendant was sentenced to an aggregate forty-five-year term of imprisonment with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

In an unpublished opinion, we affirmed defendant's convictions, but remanded for resentencing to allow the sentencing court to "engage in a qualitative analysis of the aggravating and mitigating factors" and to "address" defendant's contention that the possession of a weapon for an unlawful purpose conviction should have merged into the murder conviction. State v. Dricketts,

2

No. A-3677-13 (App. Div. Apr. 18, 2018) (slip op. at 37). Our Supreme Court denied certification. State v. Dricketts, 236 N.J. 20, 21 (2018).[2]

We incorporate by reference the detailed recitation of the facts contained in our unpublished opinion. To summarize,

> [t]he charges against defendant and Jackson stemmed from the shooting death of Dana Reid on May 9, 2005. The State presented evidence at trial that defendant and Jackson were engaged in a drug dealing operation headed by defendant, Jackson was defendant's close friend and the drug operation's "enforcer," defendant ordered Jackson to kill Reid after Reid failed to pay for drugs defendant gave him to sell, and Jackson shot and killed Reid. Witnesses heard defendant threaten to shoot Reid, and a witness identified Jackson as the person who shot him.
>
> [Dricketts, slip op. at 2.]

The eyewitness to the shooting was Reid's girlfriend. Id., slip op. at 3. She testified at trial that at approximately 12:30 a.m. on May 9, 2005, Reid was gunned down by Jackson while they were "walking down Madison Avenue in Elizabeth." Id., slip op. at 4. At the time, she and several of the State's witnesses stayed at "a house in Elizabeth called the 'Honeycomb' or 'the Honeycomb

---

[2] Codefendant Jackson was convicted of the same offenses. His convictions were also affirmed on direct appeal and our Supreme Court denied certification. State v. Jackson, No. A-2372-11 (App. Div. Sept. 12, 2016), certif. denied, 230 N.J. 556 (2017). Jackson is not a participant in this appeal.

Hideout' because 'it was a hideout for drug dealing'" and a haven for drug users and prostitutes. Ibid. Defendant and several others sold drugs out of the Honeycomb, and witnesses testified that the drug exchange with defendant that led to Reid being killed occurred at the Honeycomb. Id., slip op. at 5-6, 12.

At trial, one of the drug dealers from the Honeycomb testified that, at the time of the shooting, he saw defendant and Jackson in the area "running," and they "seemed nervous." Id., slip op. at 11. "A few weeks later, he asked defendant why he and Jackson were running, and defendant said 'that they got at [Reid]' and Jackson had killed him." Id., slip op. at 11 (alteration in original). In contrast, defendant testified on his own behalf and denied that either he or Jackson had killed Reid. Although defendant acknowledged giving Reid "five bottles" of cocaine in early March 2005, defendant explained that it was compensation for Reid serving as "a lookout for [him]." Defendant also denied threatening Reid or giving Reid "anything for him to owe [defendant] any money." Defendant asserted that Reid was shot by another drug dealer by the name of M.Q.M., a/k/a "Q."[3]

---

[3] We use initials to identify the witnesses involved in this matter to protect their identity.

However, earlier in the trial, Q had testified for the State and had denied shooting Reid. Q admitted selling drugs to Reid but denied having any "problems with [Reid]," or being "rip[ped] . . . off" by Reid. Q also acknowledged being in the area on his way to purchase a sandwich just before Reid was shot but testified that the shooting had already occurred when he returned from the sandwich shop. Reid's girlfriend confirmed seeing Q just before the shooting but denied Q's involvement in the shooting.

On February 12, 2013, approximately five weeks after defendant was sentenced, a supervising assistant prosecutor provided defense counsel with discoverable materials that had not been previously disclosed. In an accompanying letter, the prosecutor stated that a "DVD-recorded interview of [H.P.] by Elizabeth Police Department (EPD) Detective Thomas Dubeau was inadvertently overlooked and was not turned over to [defendant] as part of . . . discovery." The prosecutor explained that "[a]lthough the interview contain[ed] solely inadmissible hearsay information," he was "of the opinion that the DVD should still have been released . . . in discovery."

The prosecutor expounded that "[u]pon learning that a copy of th[e] interview was not given to [defendant]," he "had the circumstances surrounding the discovery of the DVD memorialized." Additionally, "after watching the

interview of [H.P.], [he] ordered [Union County Prosecutor's Office (UCPO) investigators] . . . to conduct a recorded interview of [P.L.], a potential witness identified by [H.P.], who was apparently never interviewed by EPD Detective Dubeau." The prosecutor also forwarded to defense counsel "a DVD copy of that interview," which was conducted on February 7, 2013, "along with the corresponding [i]nvestigation [r]eport."

H.P.'s interview with Dubeau was conducted on April 28, 2006, at the Essex County Prosecutor's Office. Dubeau told H.P. he was being questioned because "two names [were] being thrown around" in connection with Reid's killing – "[ H.P.'s] name and Q's name." In response, H.P. stated he was "locked up" at the time but his girlfriend, D.B., and her mother, P.L., had told him that "Q" had killed Reid. According to H.P., P.L. had told him that "she [had] seen [Q] ditch the gun in the sewer." H.P. also said he had heard that Reid "was going around beating people [for drugs,]" that Reid could have ripped off Q, and that Reid's girlfriend and Q had "set [Reid] up."

H.P. agreed to call P.L. from the interview room to confirm his account. During the call, although P.L. denied knowing anything about "a gun" in connection with the shooting, she stated "[t]hat gun is gone." H.P. also called

D.B., who told him she only knew what she had heard and did not have any personal knowledge about the shooting.

During P.L.'s February 7, 2013 interview with UCPO investigators, P.L. stated she "didn't see anything" and everything she knew about Reid's shooting she had heard from "other people talking in the building." She said that although she had been "clean [for] six years," "back then," she "drank and did drugs" and "was kind of in a fog." As a result, she could not even recall who had told her about the incident.

Based on this post-sentencing disclosure, in March 2019, defendant filed a PCR petition asserting, among other things, that he was entitled to a new trial because the State failed to disclose exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 87 (1963), holding that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment[.]" Defendant also asserted that he received ineffective assistance of counsel (IAC) because trial counsel did not move for a new trial based on the prosecutor's failure to disclose

7

evidence that was material and favorable to defendant in violation of both <u>Rule</u> 3:13-3 and the due process protections in the state and federal constitutions.[4]

In support, defendant submitted a December 26, 2013 certification prepared by trial counsel in connection with defendant's motion to file his direct appeal as within time. In the certification, counsel stated defendant's appeal was delayed because "after sentencing, the State disclosed exculpatory evidence which needed further investigation." According to counsel, the exculpatory evidence "was consistent with the third-party guilt theory of the defense."

Counsel explained that:

> Initially [he] intended to briefly delay the transmittal of appeal until after a motion for a [n]ew [t]rial based on newly-discovered evidence pursuant to [<u>Rule</u>] 3:20-2 was decided by the trial court. However, the investigation of the matter has proven to be more complex and time consuming than expected. Therefore, so to not cause any further delay of [defendant's] appeal, counsel is submitting this appeal while concurrently continuing the investigation to support a motion for a [n]ew [t]rial.

---

[4] Defendant's March 2019 petition was initially dismissed as "untimely" because it was filed "over six years" after the entry of the judgment of conviction, and defendant did not allege any "facts showing that [the] delay was due to excusable neglect." Defendant filed a motion for reconsideration, which was granted by the PCR judge because defendant "made a sufficient showing of excusable neglect" to "permit th[e c]ourt to relax" the procedural bar. <u>See</u> <u>R.</u> 3:22-12(a)(1).

However, counsel never filed a motion for a new trial based on newly discovered evidence or any other ground.

The PCR judge conducted oral argument on May 20, 2021. Following oral argument, the judge entered an order on June 9, 2021, denying defendant's PCR petition. In an oral opinion of the same date, the judge first addressed whether a Brady violation had occurred as asserted by defendant. In that regard, the judge acknowledged that the analysis was governed by the standard set forth in State v. Russo, 333 N.J. Super. 119 (App. Div. 2000), where this court stated that "[i]n order to establish a Brady violation, defendant must show that: (1) the prosecution suppressed evidence; (2) the evidence is favorable to the defense; and (3) the evidence is material." Russo, 333 N.J. Super. at 134.

Applying these principles, the judge found "the information withheld from the defense . . . was not material as there was not a reasonable probability that the result of the proceeding would have been different had the information been disclosed to the defense prior to trial." In support, the judge reasoned that "[H.P.] and [P.L.] . . . did not present any new helpful information that could have changed the outcome of the case had they been able to testify" because neither H.P. nor P.L. "had firsthand knowledge of the murder and only knew what they had heard from other unidentified people," or, in H.P.'s case, "what

he had heard from . . . [P.L.]."  Therefore, "any testimony that they could have presented . . . would have been hearsay."

Additionally, according to the judge, Reid's girlfriend "herself testified at trial and confirmed with 100 percent certainty that the individual she saw was [codefendant] Jackson and not Q."  Further, "[a] review of the record reveals trial counsel thoroughly cross-examined Q during which Q was confronted with prior inconsistent statements."  The judge pointed out that "[t]rial counsel directly accused Q of being involved in the shooting . . . which Q repeatedly denied."  Additionally, other witnesses "testified that the victim owed a debt to . . . defendant, . . . defendant was looking for the victim threatening to . . . pop him, and that [codefendant] Jackson worked for . . . defendant as an enforcer."  One witness in particular "testified that he saw . . . defendant and Jackson running from the direction of where the shooting occurred during the early hours of May 9[], 2005 and that defendant later told him that they . . . 'got at' . . . the victim" and that "Jackson killed . . . Reid."

Turning to defendant's contention that trial counsel was ineffective by failing to file a motion for a new trial based on newly discovered evidence, the judge determined defendant failed to meet his burden to show that counsel's performance fell below the objective standard of reasonableness set forth in

A-3354-20

Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 49-58 (1987). Further, the judge found defendant failed to show that the outcome would have been different without the purported deficient performance as required under the second prong of the Strickland/Fritz test.

The judge posited that "even if th[e] court were to find" deficient performance, defendant "failed to demonstrate a reasonable probability that said motion would have been granted and the result of the proceeding would have been different" based on the nature of "the alleged new evidence" and "the overwhelming evidence of . . . defendant's guilt." In evaluating whether such a motion would have been granted, the judge relied on the standard outlined in State v. Carter, 85 N.J. 300 (1981), where our Supreme Court stated:

> [T]o qualify as newly discovered evidence entitling a party to a new trial, the new evidence must be (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted.
>
> [Id. at 314.]

In concluding that defendant failed to meet the Carter test, the judge stated:

All three prongs must be satisfied in order for a new trial to be warranted. Here the only prong defendant . . . is able to satisfy is [p]rong [two] that the evidence was discovered at the completion of trial and was not discoverable by reasonable diligence beforehand. The defendant cannot satisfy [p]rong [one] as the statement of . . . [H.P.] is not material to his case. At most it can only be considered a somewhat contradictory [statement], if admissible at all, due to a lack of firsthand knowledge [by] . . . [H.P.].

. . . [D]efendant cannot satisfy [p]rong [three] of the C[arter] test either because the jury was presented with evidence of third[-]party guilt and they . . . rejected that theory.

All . . . [H.P.'s] statement could have provided to the defense was an indication that someone else . . . had information that would've contradicted [Reid's girlfriend's] testimony at trial that Jackson was the shooter.

Additionally, the judge pointed out that the statement obtained from P.L. showed "that the only thing she heard" was through unidentified persons. In contrast, the judge explained that the State presented "overwhelming evidence of . . . defendant's guilt at trial." Notably,

[Reid's girlfriend's] testimony . . . was effectively attacked by trial counsel during the trial and the jury still chose to convict . . . defendant. As such . . . defendant has failed to show that he suffered prejudice as a result of . . . trial counsel failing to make such an argument.

12

After applying the governing principles, the judge also concluded that "viewing the facts alleged in the light most favorable to . . . defendant," defendant was "not entitled to an evidentiary hearing" because he "failed to make a prima facie showing of [IAC]."  This appeal followed.

On appeal, defendant raises the following points for our consideration:

> POINT I - DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE THE STATE WITHHELD EXCULPATORY EVIDENCE.
>
> POINT II - THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO PURSUE A MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE.

II.

In Point I, defendant argues his convictions should be reversed because "the very specter of Q's guilt compounded by defendant[] being deprived of pursuing a comprehensive third-party [guilt] defense – predicated upon [H.P.'s] information having been withheld from defendant – constituted a Brady violation."  He asserts that "[i]rrespective of [H.P.'s] information as to Q having killed [Reid] constituting hearsay, a Brady violation did exist," especially when

13

the State's key witnesses "had substantial criminal backgrounds which seriously impacted their credibility."

The suppression by the prosecution of evidence favorable to a defendant is a violation of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. As previously stated, three elements must be considered when deciding whether a Brady violation has occurred: "(1) the evidence at issue must be favorable to the accused, either as exculpatory or impeachment evidence; (2) the State must have suppressed the evidence, either purposely or inadvertently; and (3) the evidence must be material to the defendant's case." State v. Brown, 236 N.J. 497, 518 (2019).

Here, it is clear H.P.'s statement contained evidence favorable to the defense and the State conceded it inadvertently failed to disclose the evidence, satisfying the first two elements of a Brady violation. Evidence is favorable to the accused where it simply bolsters a defendant's claims. State v. Nelson, 155 N.J. 487, 497 (1998). Further, "the Brady disclosure rule applies . . . to information of which the prosecution is actually or constructively aware," and knowledge, for Brady purposes, may be imputed from police to prosecutor. Nelson, 155 N.J. at 497-500; see id. at 519 (Handler, J., concurring in part and

dissenting in part) (collecting cases); see also State v. Mustaro, 411 N.J. Super. 91, 102 (App. Div. 2009) (imputing police officer's knowledge of a videotape of defendant's arrest to the prosecutor).

As to the third element:

> The materiality standard is satisfied if defendant demonstrates that there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. Stated another way, the question is whether in the absence of the undisclosed evidence . . . the defendant receive[d] a fair trial[,] which is understood as a trial resulting in a verdict worthy of confidence. If the undisclosed evidence was merely cumulative or repetitious as to the purpose for which it could have been used, the conviction should not be set aside.
>
> [Russo, 333 N.J. Super. at 134 (citations omitted).]

To determine "whether there is a reasonable probability that the result of defendant's trial would have been different had the suppressed evidence been disclosed," we must consider the evidence suppressed as a whole and not "view in isolation the impact of each discrete item withheld." Id. at 135. Indeed, the potential effect of the withheld information must be considered "in the context of the entire record," State v. Marshall, 123 N.J. 1, 199-200 (1991), with attention to "the strength of the State's case, the timing of disclosure of the withheld evidence, the relevance of the suppressed evidence, and the withheld

evidence's admissibility." Brown, 236 N.J. at 519. Because "the issue of materiality is a mixed question of law and fact," the trial judge's "conclusion regarding whether defendant sustained his burden of proof is not entitled to the same deference as his factual findings." Russo, 333 N.J. Super. at 135.

Applying these principles, we find no error in the PCR judge's determination that H.P.'s statement was not material. The statement itself and any testimony H.P. could potentially have given would not have been admissible. H.P. only reported to police things he had heard from others. He had no personal knowledge about the shooting or about any alleged gun disposal by Q. Thus, his testimony would have been inadmissible hearsay. Further, in her statement, P.L. did not corroborate H.P.'s account that she had seen Q drop a gun down a sewer. Instead, like H.P., P.L. only reported things she had heard from others and had no personal knowledge about the shooting.

Although P.L. told H.P. during their telephone conversation "that gun is gone," under the circumstances, that comment would not have created a reasonable doubt as to defendant's guilt given P.L.'s admission of impaired memory from extensive drug and alcohol use, Q's trial testimony denying any involvement in the killing, and Reid's girlfriend's eyewitness identification of the shooter. See Kyles v. Whitley, 514 U.S. 419, 434-35 (1995) (explaining that

16

a "reasonable probability" of a different result is shown when the undisclosed, favorable evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict" (citing United States v. Bagley, 473 U.S. 667, 678, 682 (1985))); United States v. Agurs, 427 U.S. 97, 112 (1976) ("[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed."). Here, there was no Brady violation warranting a new trial.

In Point II, defendant asserts the case should be remanded for an evidentiary hearing because he demonstrated that trial counsel was ineffective by failing to "pursu[e] a motion for a new trial based on newly discovered evidence (specifically, [H.P.'s] statement)." In support, defendant relies on trial counsel's certification that the filing of defendant's appeal was delayed in order to file the motion but points out that the motion was never filed.

"We review the legal conclusions of a PCR judge de novo," State v. Reevey, 417 N.J. Super. 134, 146 (App. Div. 2010), but "we review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). Rule 3:22-10(b) provides that a defendant is entitled to an evidentiary hearing only if: (1) the defendant establishes a prima facie PCR claim; (2) "there

are material issues of disputed fact that cannot be resolved by reference to the existing record"; and (3) "an evidentiary hearing is necessary to resolve the claims for relief."  Indeed, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to post-conviction relief, . . . then an evidentiary hearing need not be granted."  Brewster, 429 N.J. Super. at 401 (second alteration in original) (quoting State v. Marshall, 148 N.J. 89, 158 (1997)).

"To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits."  R. 3:22-10(b).  Moreover, a defendant must make that showing "by a preponderance of the credible evidence."  State v. Echols, 199 N.J. 344, 357 (2009) (citing State v. Goodwin, 173 N.J. 583, 593 (2002)).  In particular, to establish a prima facie IAC claim, a defendant must demonstrate that:  (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.

When reviewing IAC claims, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption" that counsel's performance was reasonable.  Strickland, 466 U.S. at 689.  If the court

finds error on counsel's part, "[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached." State v. Chew, 179 N.J. 186, 204 (2004) (citing Strickland, 466 U.S. at 694). Failure to meet either prong of the Strickland test results in the denial of a petition for PCR. State v. Nash, 212 N.J. 518, 542 (2013).

Defendant's ineffectiveness claim is predicated on counsel's failure to pursue a motion for a new trial based on newly discovered evidence after the State disclosed H.P.'s interview. As previously stated:

> To meet the standard for a new trial based on newly discovered evidence, [a] defendant must show that the evidence is 1) material, and not "merely" cumulative, impeaching, or contradictory; 2) that the evidence was discovered after completion of the trial and was "not discoverable by reasonable diligence beforehand"; and 3) that the evidence "would probably change the jury's verdict if a new trial were granted."
>
> [State v. Ways, 180 N.J. 171, 187 (2004) (quoting Carter, 85 N.J. at 314).]

A defendant must satisfy "all three prongs" of the Carter test to obtain "the relief of a new trial." Ibid.

Focusing on prong three of the Carter test, defendant would not be entitled to a new trial for the same reason that we determined there was no Brady violation. Critically, the newly disclosed evidence would not alter the earlier

19

verdict in a new trial. Where, as here, a defendant asserts his attorney was ineffective by failing to file a motion, he must establish that the motion would have been successful. "It is not ineffective assistance of counsel for defense counsel not to file a meritless motion . . . ." State v. O'Neal, 190 N.J. 601, 619 (2007). Because a motion for a new trial based on newly discovered evidence would not have been successful, defendant's IAC claim predicated on trial counsel's failure to file such a motion must fail. Likewise, we discern no abuse of discretion in the judge's denial of defendant's PCR claim without conducting an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION