**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1955-23

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

LARRY M. NOEL,

    Defendant-Respondent.

_____

> Argued on October 30, 2024 – Decided November 26, 2024
>
> Before Judges Mayer and Rose.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 19-10-0128.
>
> Bethany L. Deal, Deputy Attorney General, argued the cause for appellant (Matthew J. Platkin, Attorney General of New Jersey, attorneys; Bethany L. Deal, of counsel and on the briefs).
>
> Alissa D. Hascup argued the cause for respondent (Einhorn, Barbarito, Frost & Botwinick, PC, attorneys; Alissa D. Hascup and Matheu D. Nunn, on the brief).

PER CURIAM

The State appeals from a January 22, 2024 Law Division order dismissing an indictment against defendant Larry M. Noel for destruction or loss of evidence. We reverse.

I.

We summarize the pertinent facts from the limited record[1] before us "in a light most favorable to the State." State v. Twiggs, 233 N.J. 513, 544 (2018). Detective Brian Borow of the Bayonne Police Department was assisting the State Police in a multi-agency undercover investigation of underage sexual exploitation. Using an age-regressed photograph of himself, Borow created a profile on Adam4Adam (A4A), an adults-only male dating website. Individuals using the website were required to acknowledge they were eighteen years of age or older.

Around 8:55 p.m., on April 11, 2019, Borow received a message from defendant with the username, "morrisnoel." To lend context to the issues raised on appeal, we set forth, in full, the one-hour conversation between defendant and Borow, who indicated his name was "Mark":

---

[1] For example, the record provided on appeal does not include all notices of motion filed by defendant or the emails or subpoena referenced in our factual summary. Because the parties do not dispute the omitted documents, our review is not hampered by the omissions.

[DEFENDANT]:   Hello are you looking for fun tonight?

[BOROW]:  sure

[DEFENDANT]:  cool are you a top or bottom

[BOROW]:  like both, but bottom more

[DEFENDANT]:  cool, I can travel to you

[BOROW]:  nice, how old r u

[DEFENDANT]:  29 and you

[BOROW]:  14. gonna be 15 in 2 weeks

[DEFENDANT]:  oh ok

[DEFENDANT]:  ?

[BOROW]:  u ever meet anyone on here?

[DEFENDANT]:  sometimes and you

[BOROW]:  not yet

[DEFENDANT]:  what are you waiting for…..lol

[BOROW]:  lol, haven't had any offers yet

[DEFENDANT]:  you want me to offer?

[BOROW]:  I wouln't say no. especially to that arm in the pic

[DEFENDANT]:  lol…..when?

3

A-1955-23

[BOROW]: u tell me. I want sure if were ok with my age after the oh ok answer.

[DEFENDANT]: lol…..when your free

[BOROW]: my aunt works nites. so I'm free

[DEFENDANT]: you want me to leave now?

[BOROW]: are u close to where I am

[DEFENDANT]: what town

[BOROW]: upper saddle river

[DEFENDANT]: 35 minutes

[BOROW]: ok. not far

[DEFENDANT]: tonight?

[BOROW]: I guess. is it too far?

[DEFENDANT]: no

[BOROW]: nice. what u looking to get into if u come

[DEFENDANT]: yes?

[BOROW]: u come, def yes

[DEFENDANT]: I would like to rim you, give you oral and sex and kissing if your into that

[BOROW]: never did rim before but all that sounds hot

[DEFENDANT]: cool, can you host or car sex

4

A-1955-23

[BOROW]: I can host or do car, what kinda car u have

[DEFENDANT]: hosting is better….lol

[BOROW]: k. def more room

[DEFENDANT]: address

[BOROW]: can I see a face pic

A message was received stating morrisnoel unlocked his photos.

(a photo of a black male approximately 35 years old was visible).

[BOROW]: nice, how old r u

[DEFENDANT]: a smile face emoji, 29

[BOROW]: u look good

[DEFENDANT]: thank you

[BOROW]: chestnut dr. in upper saddle river

[DEFENDANT]: number of house

[BOROW]: [XX], what time u coming

[DEFENDANT]: ill get ready then i will leave and i will bring lube

[BOROW]: nice. i don't have any, where u coming from

[DEFENDANT]: Parsippany

5

[BOROW]:  dont know where that is. but ok

[DEFENDANT]:  ill message you before I leave and I will contact you on here when im there

[BOROW]:  k. what kinda car u driving, is it fast. Lmao

[DEFENDANT]:  Nissan rogue

[BOROW]:  not sure what it looks like. but hopefully its fast., btw I'm mark

[DEFENDANT]:  im Kyle

[BOROW]:  k. let me know when ur on the way. I'll take a shower

[DEFENDANT]:  ok

[DEFENDANT]:  Leaving now

[BOROW]:  done in shower. when u getting here

[DEFENDANT]:  5mins

[BOROW]:  k

[(Emphasis added).]

Defendant arrived at the meet location and was arrested. The police found his cellphone on the passenger seat of his car "with the [A4A] app opened."

That same evening, defendant gave a Mirandized statement to Borow and another detective at the Bergen County Prosecutor's Office. When asked if he knew why he was being interviewed, defendant replied "[y]eah, because I was

6

an idiot." Defendant claimed the profile picture "didn't look like it was young," but acknowledged the person he messaged stated he was "fourteen, fifteen in two weeks." Suspicious of the interaction, defendant gave the wrong model of his car. He told the officers it was "[t]he first time" he "ever met anybody that's under the age of eighteen on that app" and people lied about their age on the app "all the time." Defendant acknowledged he brought lubricant to the meet location. When asked whether he "would've hooked up" with the person had he not been arrested, defendant responded: "I'm just gonna be honest[,] I don't know."

In October 2019, defendant was charged in a State indictment with second-degree luring or enticing a child, N.J.S.A. 2C:13-6(a); second-degree attempted sexual assault, N.J.S.A. 2C:14-2(c)(4) and :5-1(a); and third-degree attempted endangering the welfare of a child-impairing or debauching the morals of a child, N.J.S.A. 2C:24-4(a) and :5-1(a). Bergen County was designated the county of venue for trial purposes.

We glean from the record defendant thereafter filed several motions. Pertinent to this appeal, defendant asserted an entrapment defense and moved to compel Borow's A4A profile, including his "profile picture and all details provided by . . . Borow to generate Mark's profile (such as Mark's age, height,

weight, etc.)."  In response, the State apparently indicated Borow's profile "did not appear to have been preserved."  Defense counsel then served a subpoena duces tecum on A4A seeking Borow's profile.  In response, A4A's counsel apparently disclosed his client could not locate Borow's profile on its server because it had been deleted.  At that time, A4A's counsel had not disclosed the company's retention policy.  The State confirmed Borow's profile "was not available."

During oral argument on defendant's ensuing motion to dismiss the indictment, defense counsel cited her conversation with A4A's counsel and contended Borow "intentionally deleted" his profile.  Defendant counsel argued, "this is not a situation where evidence was somehow lost or inadvertently destroyed."

The State countered Borow's profile was not intentionally deleted, but the detective retired and no longer had his log-in credentials.  Acknowledging the failure to preserve the profile was an issue, the State noted the messages between Borow and defendant were preserved, which included Borow's representation that he was underage.  The State contended an adverse-inference charge would cure any prejudice to defendant.

A-1955-23

In an oral decision accompanying the January 22, 2024 order, the motion court granted defendant's motion. The court found Borow's profile "was the lure utilized to hook [defendant] and ultimately apprehend and charge [him]." The court further found "extremely troubling" that the incriminating messages were preserved but the "online profile was not with seemingly no explanation other than [Borow] forgot the login information." Citing the factors we espoused in State v. Hollander, 201 N.J. Super. 453, 479 (App. Div. 1985), the motion court concluded the deletion of Borow's profile caused "extreme prejudice to [defendant]" and was done in "bad faith or connivance or an extremely egregious carelessness on the part of the detective." The court dismissed the indictment with prejudice, subject to the State's recovery of Borow's profile.

After filing its notice to appeal, the State served a grand jury subpoena, via email, on A4A's attorney seeking, "IP logs and subscriber information related to A4A username: ever4km." In a responding email, A4A's counsel stated, in pertinent part:

> I have received an answer from my client. I was unaware of this policy since I['] ve never received a request from that long ago. According to my client[,] we automatically temporarily delete an account after 194 days of inactivity and then permanently, 90 days of inactivity after the temporary deletion.

A-1955-23

> So, we do hold accounts but only for 284 days from inactivity.

Over defendant's objection, we granted the State's motion to supplement the record with the email exchange between A4A's attorney and the State Police detective who served the subpoena. The parties thereafter filed their appellate briefs.

On appeal, the State argues: defendant failed to demonstrate the State deleted Borow's profile "let alone that it did so in bad faith"; the profile was not facially exculpatory, as the court found, therefore defendant failed to satisfy Hollander's second prong; and an adverse-inference charge is an appropriate alternative to dismissal of the indictment.

In response, defendant urges us to uphold the court's decision, asserting as the motion court found, the lost or destroyed profile violated his rights to due process, a fair trial, and present a defense. Defendant further argues the State improperly served the grand jury subpoena after the court dismissed the indictment, but the supplemental evidence does not change the motion court's decision.

## II.

As a threshold matter, we reject defendant's argument that the State improperly issued a grand jury subpoena after the court dismissed the

10

indictment. "[U]se of the grand jury [subpoena] <u>after</u> an indictment has been returned . . . is permitted unless the dominant purpose of that use was to buttress an indictment already returned by the grand jury." <u>State v. Francis</u>, 191 N.J. 571, 592 (2007). Conversely, after an indictment has been issued, "the State may continue to use the grand jury to investigate additional or new charges against a defendant" but "may not use the grand jury to gather evidence solely in respect of the charges already filed." <u>Ibid.</u>

When, as in this case, an indictment is dismissed "in its entirety, the criminal action [i]s no longer pending." <u>State v. Campione</u>, 462 N.J. Super. 466, 506 (App. Div. 2020). Accordingly, the State was permitted to investigate the allegations against defendant as no charges remained after the indictment was dismissed. Ordinarily, we might remand the matter for the motion court to consider supplemental material that was not presented for its consideration. <u>See</u> <u>Zaman v. Felton</u>, 219 N.J. 199, 226-27 (2014). We discern no reason to do so here. The subpoenaed information explains A4A's retention policy, but it does not expressly address Borow's conduct, which was a deciding factor in the court's decision.

## III.

We turn to the State's argument that the motion court erroneously dismissed the indictment based on Borow's failure to preserve his undercover A4A profile. As the court recognized, the indictment did not fail for lack of evidence as to each element of the offenses charged. See State v. Morrison, 188 N.J. 2, 13 (2006). Instead, the court found permitting the case to proceed to trial would be "fundamentally unfair" to defendant. We review de novo the court's legal interpretations, see State v. Grate, 220 N.J. 317, 330 (2015), to ensure the court employed the correct legal standard in dismissing the indictment, see State v. Abbati, 99 N.J. 418, 436 (1985).

Due process requires the State disclose exculpatory evidence. Brady v. Maryland, 373 U.S. 83, 87 (1963). A Brady violation occurs when the prosecution suppresses evidence that is material and favorable to the defense. See State v. Martini, 160 N.J. 248, 268 (1999). "Evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" State v. Robertson, 438 N.J. Super. 47, 67 (App. Div. 2014) (quoting State v. Knight, 145 N.J. 233, 246 (1996)).

"When the evidence withheld is no longer available, to establish a due process violation a defendant may show that the evidence had 'an exculpatory value that was apparent before [it] was destroyed' and that 'the defendant would be unable to obtain comparable evidence by other reasonably available means.'" State v. Mustaro, 411 N.J. Super. 91, 102 (App. Div. 2009) (alteration in original) (quoting California v. Trombetta, 467 U.S. 479, 489 (1984)). However, a different standard applies to evidence that is only potentially useful. "Without bad faith on the part of the State, 'failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" George v. City of Newark, 384 N.J. Super. 232, 243 (App. Div. 2006) (quoting Arizona v. Youngblood, 488 U.S. 51, 57 (1988)).

"When there has been 'suppression, loss, or destruction of physical evidence,' our courts focus on three factors to determine whether a due process violation has occurred." Ibid. (quoting State v. Dreher, 302 N.J. Super. 408, 483 (App. Div. 1997), overruled on other grounds by State v. Brown, 190 N.J. 144 (2007)). These factors, which we established in Hollander, 201 N.J. Super. at 479, are: "(1) the bad faith or connivance by the government; (2) whether the evidence was sufficiently material to the defense; and (3) whether the defendant was prejudiced." George, 384 N.J. Super at 243.

13

Guided by these principles, even if Borow's profile was "potentially exculpatory" as the motion court found, we disagree with the court's conclusion that the profile was deleted in bad faith based on Borow's "egregious carelessness" in failing to preserve the profile. Acknowledging a plenary hearing was not conducted on defendant's motion,[2] the court nonetheless disbelieved Borow "simply forgot the login information" because Borow's phone was extracted and "none of the information used to create the profile, including the email address purportedly used, was recovered from the phone." As the State explained, however, police preserved messages with defendant, including Borow's representation that he was an underage male.

The record before the motion court is devoid of any evidence suggesting Borow deleted the profile in bad faith or was egregiously careless in doing so. Indeed, the reasons for Borow's inability to access his profile are not apparent from the record other than the State's assertion that "the detective no longer had his login credentials." See Hollander, 201 N.J. Super. at 479. Because the exculpatory nature of Borow's profile was not apparent before the evidence was

---

[2] There is no indication in the record that defendant sought an N.J.R.E. 104 hearing on his dismissal motion.

A-1955-23

deleted, and is only potentially exculpatory, the profile was not constitutionally material. See Trombetta, 467 U.S. at 489; Mustaro, 411 N.J. Super. at 102.

Nor are we convinced any prejudice to defendant could not be cured by an alternate remedy. We therefore disagree with the motion court's conclusion that the deleted profile was "critical" to "defendant's right to confront the witnesses against him." To the extent defendant anticipates asserting an entrapment defense at trial, he

> must prove by a preponderance of evidence that he . . . was induced or encouraged to commit the offense by the law enforcement officers . . . or knowing false representations which by their very nature created a substantial risk that the crime would be committed by an average person who was NOT otherwise ready to commit it[,]" [and] the police conduct in fact caused him . . . to commit the crime; in other words, that the crime was a direct result of the police action.
>
> [Model Jury Charges (Criminal), "Entrapment (N.J.S.A 2C:2-12)" (approved Jan. 12, 1982).]

Nothing about the deleted profile prevents defendant from asserting at trial Borow's profile lulled him into believing he was communicating with an adult – notwithstanding his A4A message exchange with Borow and his post-arrest admissions. Further, the State provided defendant a color photograph of the age-regressed photograph Borow used in his profile. The details of the photograph and the circumstances under which it was recreated may present an

15                                                                        A-1955-23

opportunity for vigorous cross-examination, especially in view of an adverse-inference charge.

Under the circumstances presented here, we therefore conclude dismissal of the indictment was not warranted and an adverse-inference charge was a more suitable remedy. See State v. Dabas, 215 N.J. 114, 140 (2013) (holding "[a]n adverse-inference charge is one permissible remedy for a discovery violation, such as the destruction of interrogation notes that should have been turned over to the defense"). In accordance with the Court's decision in Dabas, upon defendant's request, the court should instruct the jurors they may draw an adverse inference relative to Borow's deleted profile.

Reversed and remanded for further proceedings. Jurisdiction is not retained.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1955-23